1  KAWAHITO SHRAGA & WESTRICK LLP
2  James K. Kawahito (No. 234851)
   1990 South Bundy Dr., Suite 280
3  Los Angeles, CA 90025
   Telephone:  (310) 746-5302
4  Facsimile:  (310) 593-2520
   E-mail:       jkawahito@kswlawyers.com

5

6  ATTORNEYS FOR PLAINTIFF
   Southern California Darts Association



FILED
CLERK U.S. DISTRICT COURT

MAR -6 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

7

8                UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                    WESTERN DIVISION

11 SOUTHERN CALIFORNIA DARTS        CASE **CV12- 01899** PGK (JCG)
12 ASSOCIATION, a California
   unincorporated association,        COMPLAINT FOR:
13

14               Plaintiff,            (1)  **VIOLATION OF SECTION
                                            43(a) OF THE LANHAM
15        vs.                               ACT;**
16 SOUTHERN CALIFORNIA DARTS         (2)  **VIOLATION OF
   ASSOCIATION, INC., a California        CALIFORNIA BUSINESS &
17 corporation, DINO M. ZAFFINA, an       PROFESSIONS CODE
   individual, and DOES 1-10,             SECTION 17200** *et seq.***;**
18
                                     (3)  **VIOLATION OF
19                                        CALIFORNIA COMMON
20               Defendants.              LAW FOR TRADEMARK
                                          INFRINGEMENT;**
21
                                     (4)  **VIOLATION OF
22                                        CALIFORNIA COMMON
23                                        LAW FOR UNFAIR
                                          COMPETITION; and**
24
                                     (5)  **VIOLATION OF
25                                        CALIFORNIA BUSINESS &
26                                        PROFESSIONS CODE
                                          SECTION 14247**
27

28                                   **DEMAND FOR JURY TRIAL**

COMPLAINT

1    Plaintiff Southern California Darts Association ("Plaintiff" or "SCDA")

2    alleges as follows:

3                              **PARTIES**

4         1.    Plaintiff, Southern California Darts Association, is an unincorporated

5    association with its principal place of business at P.O. Box 16551, Encino, CA

6    91616.

7         2.    Defendant Southern California Darts Association, Inc. ("Zaffina Co.")

8    is a California corporation with its principal place of business at 3455 Ocean View

9    Boulevard, Suite 100, Glendale, CA 91208.

10        3.    Defendant Dino M. Zaffina ("Zaffina") is a natural person who is, on

11   information and belief, President, CEO, and a member of Zaffina Co., and is and at

12   all times herein mentioned was residing in California.

13        4.    On information and belief, Does 1-10 (collectively, the "Doe

14   Defendants") are individuals and business entities who have participated or

15   assisted in the conduct alleged herein or are otherwise responsible therefor.  The

16   identity of these Doe Defendants presently is not and cannot be known to Plaintiff,

17   but these persons and/or entities will be added as named defendants to this action

18   as and when they are identified.  Unless otherwise indicated, Zaffina Co. and

19   Zaffina and the Doe Defendants are referenced collectively herein as

20   "Defendants."  Plaintiff is informed and believes and on that basis alleges that

21   Defendants, and each of them, are, and at all times herein mentioned were, the

22   agents, servants, employees, joints venturers, partners or alter egos of their co-

23   defendants and were acting at all times within the course, scope, purpose and

24   authority conferred upon that party by contract, approval or ratification, whether

25   such authority was actual or apparent.

26        5.    Plaintiff is informed and believes and based thereon alleges that all

27   Defendants, including the fictitious Doe Defendants, were at all relevant times

28   acting as actual agents, coconspirators, ostensible agents, partners and/or joint

1   venturers, alter egos, and employees of all other Defendants, and that all acts
2   alleged herein occurred within the course and scope of said agency, employment,
3   partnership, and joint venture, conspiracy or enterprise, and with the express and/or
4   implied permission, knowledge, consent, authorization and ratification of their co-
5   Defendants; however, each of these allegations are deemed "alternative" theories
6   whenever not doing so would result in a contradiction with the other allegations.

7          6.     Plaintiff is informed and believes and thereupon alleges that Zaffina
8   Co. is, and at all times mentioned herein was, owned and controlled by Zaffina;
9   that there exists, and all times mentioned herein has existed, a unity of interest and
10  ownership between and among each of Zaffina Co. and Zaffina, such that any
11  individuality and separateness of each of Zaffina Co. and Zaffina has ceased, if
12  ever the same existed; that Zaffina Co. is a mere shell, instrumentality, and/or
13  conduit through which Zaffina has carried on his business affairs, as if Zaffina Co.
14  did not exist; and that Zaffina is the alter ego of Zaffina Co., in that he has
15  completely dominated and controlled the business and affairs of Zaffina Co., has
16  commingled the funds and assets of Zaffina Co. with his own funds and assets, has
17  caused or allowed Zaffina Co. to be under-capitalized and/or insolvent, has
18  withheld funds of Zaffina Co. for his own benefit and to the detriment of Zaffina
19  Co.'s creditors, has transferred assets between and among himself and Zaffina Co.
20  for no or inadequate consideration, has diverted assets from Zaffina Co. for his
21  own use and benefit, has failed to maintain proper corporate records and minutes
22  of SDCA Inc., and/or has caused or allowed Zaffina Co. to improperly issue stock,
23  so that adherence to the fiction of a separate existence between Zaffina and Zaffina
24  Co. would sanction fraud and promote injustice.

25                        **JURISDICTION AND VENUE**
26          7.     This Court has jurisdiction by virtue of the fact that: (1) this is an
27  action arising under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051,
28  et seq. (the Lanham Act), jurisdiction being conferred in accordance with 15

1 | U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b).

2 |      8.    Jurisdiction for the California state statutory claims is conferred in

3 | accordance with the principles of supplemental jurisdiction pursuant to 28 U.S.C.

4 | § 1367(a).

5 |      9.    Venue is proper in this Court under 28 U.S.C. § 1391(a) or (b) in that,

6 | on information and belief, a substantial part of the events or omissions giving rise

7 | to the claims occurred in this District.

8 | **FACTS**

9 |      10.    SCDA is an unincorporated association of darts enthusiasts that exists

10 | to promote competitive darts and to coordinate league play in the Southern

11 | California area.  SCDA also establishes friendly relationships with similar

12 | organizations worldwide and sponsors national and international darts

13 | tournaments.

14 |      11.    SCDA was organized in or around Santa Monica, California, in or

15 | around 1960.  It has operated continuously from the 1960s to the present day.

16 | From 1966-1977 a separate nonprofit *corporation*, Southern California Darts

17 | Association, Inc. operated alongside the unincorporated association.  SCDA

18 | currently has approximately one hundred (100) active members ("Association

19 | Members").

20 |      12.    SCDA is well known in the national and international darts

21 | community under the names Southern California Darts Association, SCDA, and

22 | SoCal Darts.

23 |      13.    Defendant Zaffina is a former member of SCDA.  In July and August

24 | of 2010, Zaffina became upset about the computation of scores and the omission of

25 | his middle initial on SCDA score sheets.  This developed into a heated

26 | disagreement between him and the SCDA board.  The circumstances surrounding

27 | Defendants Zaffina's removal from the SDCA and subsequent retaliatory actions

28 | have received significant press coverage.  See Chris Vogel, "Dastardly Deeds in

1   Darts," <u>LA Weekly</u>, at p. 7 (Feb. 2, 2012), <u>available</u> <u>at</u>
2   http://www.laweekly.com/2012-02-02/news/dino-m-zaffina-southern-california-
3   darts-association/.  A true and correct copy of this article is attached hereto as
4   Exhibit "A."
5        14.   As a result of this disagreement, Zaffina's membership was revoked
6   by a vote of the SCDA board of directors, in accordance with the SCDA bylaws,
7   on the basis of unsportsmanlike behavior.  Zaffina ceased to be a member of
8   SCDA as of August 23, 2010.
9        15.   On December 12, 2010, Defendant Zaffina registered the domain
10  name southerncaliforniadartsassociation.com.
11       16.   On January 3, 2011, Defendant Zaffina founded and incorporated with
12  the California Secretary of State a for-profit corporation under the name "Southern
13  California Darts Association, Inc."  Upon information and belief, Zaffina
14  knowingly, intentionally, and deliberately adopted and used the name in order to
15  cause confusion and to obstruct the Plaintiff association's purpose of coordinating
16  competitive darts play.
17       17.   Defendant Zaffina, on information and belief, intended to use his
18  incorporation of Zaffina Co. under the name Southern California Darts Association
19  to interfere with SDCA's activities.
20       18.   On August 29, 2011, Defendants Zaffina and Zaffina Co. sent a "press
21  release" to various individual members of SCDA announcing that Southern
22  California Darts Association, Inc. was "returning from the dead," that the "new and
23  legal Southern California Darts Association" would be operating in Southern
24  California, primarily Los Angeles and Orange County.
25       19.   On August 30, 2011, Defendant Zaffina filed a Fictitious Business
26  Name Statement on behalf of Zaffina Co. for its alleged subsidiaries SCDA, So Cal
27  Darts Association, So Cal Darts, and SCDA Products (Filing No. 2011090761)
28  with the California Secretary of State.

20.     On September 26, 2011, Defendant Zaffina Co., under Zaffina's command, filed a lawsuit in Superior Court of the State of California, County of Los Angeles, North Central District (Case No. EC 056642) ("State Court Action") against a number of Association Members of SCDA and several business establishments that host SCDA league play.  In particular, Zaffina Co. named more than 60 individual defendants in the State Court Action, most of whom are simply members of SCDA who participated in the darts league run by the SDCA.  In the State Court Action, Zaffina Co alleged, *inter alia*, that they had misappropriated the Zaffina Co.'s name and committed trade libel.

## THE SCDA MARKS

21.     Since at least 1963, Plaintiff has made continuous use of the trade name Southern California Darts Association and the unregistered service marks SCDA and So Cal Darts (together, the "SCDA marks") in connection with services pertaining to competitive darts, including but not limited to league play, leisure activities, and events.  Plaintiff has hosted and participated in numerous national and international darts competitions, and is recognized as a long-time member of the American Darts Organization.

22.     Plaintiff also uses two unregistered logo service marks (collectively, the "logo marks").  Since at least 1979, Plaintiff has used a logo consisting of a dartboard rendered in black and white, with the words Southern California Darts Assoc. printed in the circular border ("black and white logo").  A true and correct copy of the black and white logo is attached hereto as Exhibit "B."  Plaintiff also uses an unregistered logo service mark consisting of a dartboard rendered in color surrounded by a grey border with the words "Southern California Darts Association Est. 1963" ("color logo").  A true and correct copy of the color logo is attached hereto as Exhibit "C."

23.     For approximately ten (10) years, Plaintiff has advertised its services and communicated with its members on a website using its trade name Southern

1 | California Darts Association, the SCDA marks, the black and white logo, and the
2 | color logo.  This website is hosted at the domain name www.socaldarts.com.

3 |     24.    SCDA has spent years developing relationships with pubs, restaurants,
4 | sports clubs, and social clubs in the Los Angeles Area (the "Host Pubs").  The Host
5 | Pubs, before Defendants began asserting ownership of the SCDA name and marks,
6 | welcomed association members for league play under the name Southern
7 | California Darts Association.  Host pubs paid sponsorship fees to SCDA, and some
8 | Host Pubs chose also to pay the membership dues for teams that play in their
9 | facilities.

10 |     25.    The trade name Southern California Darts Association is inherently
11 | distinctive, and therefore immediately protectable upon its use as a mark.

12 |     26.    The SCDA marks and the logo marks are inherently distinctive and
13 | derive from the protectable trade name Southern California Darts Association, and
14 | therefore are immediately protectable upon their use as service marks.

15 |     27.    The trade name Southern California Darts Association has also
16 | become distinctive through the acquisition of secondary meaning, over years of use
17 | in the competitive darts community.  The SCDA marks and logo marks have
18 | likewise become distinctive through the acquisition of secondary meaning.  The
19 | trade name and marks are uniquely identified with Plaintiff's association.

20 |     28.    As a result of SCDA's years of play and sponsorship of national and
21 | international tournaments using the name Southern California Darts Association,
22 | the trade name is considered "one of the oldest and most prestigious names in the
23 | world of darts."

24 |     29.    Upon information and belief, Defendants chose the name Southern
25 | California Darts Association to trade off of Plaintiff's reputation and goodwill.
26 | Upon information and belief, this is also the reason Defendants registered the
27 | fictitious business names SCDA, So Cal Darts Association, So Cal Darts, and
28 | SCDA Products.

30.     SCDA's extensive use, promotion and advertising have caused the SCDA marks and trade name to become exceedingly famous.

31.     The SCDA marks and trade name possess an extraordinarily valuable goodwill that belongs to SCDA.

### DEFENDANTS' USE OF THE SCDA MARKS

32.     In the United States and in California, and on the world wide web, Defendants have advertised competitive darts services using Plaintiff's trade name, the SCDA marks, and a confusingly similar logo without authorization or consent. A true and correct copy of Defendants' website homepage is attached hereto as Exhibit "D."  Defendants purchased and use the domain www.southerncaliforniadartsassociation.com to advertise these services.

33.     Defendants Zaffina and Zaffina Co. have intentionally and willfully used Plaintiff's SCDA marks on "press releases" that it sends to association members, darts players, Host Pubs, and darts organizations.  These "press releases" advertise Defendants' intention to start a competitive darts league in the Southern California area.  The "press releases," which also contain information about the State Court Action, are intended, upon information and belief, to intimidate association members and Host Pubs.

34.     Upon information and belief, Defendant Zaffina has intentionally held himself out as the President and CEO of Southern California Darts Association, knowing that this will cause confusion as to Plaintiff's leadership.

35.     Upon information and belief, Defendants Zaffina and Zaffina Co. have intentionally and willfully used the name "Southern California Darts Association, Inc." to mislead Host Pubs, darts players, and darts organizations as to the sponsorship and leadership of the SCDA.

36.     As a result of Defendants' unauthorized and aggressive use of the name "Southern California Darts Association, Inc." many darts players, other darts organizations, and Host Pubs have been confused as to the leadership of Plaintiff's

1  organization and Defendant Zaffina Co.'s relationship to Plaintiff.

2      37.    Upon information and belief, Defendants have used the fact of their

3  incorporation under the name Southern California Darts Association, Inc. to

4  confuse and intimidate Host Pubs and association members, telling them it is

5  illegal to be involved with Plaintiff's unincorporated association.

6      38.    As a result of this actual confusion and Defendants' intimidation,

7  many of the Host Pubs have refused to host Plaintiff for league play this season.

8  This materially interferes with Plaintiff's purpose of coordinating competitive darts

9  league play.  It also interferes with Plaintiff's funding, as the Host Pubs normally

10 pay sponsorship fees and sometimes pay teams' membership fees.  Moreover, it

11 harms Plaintiff's individual members, who are unable to play competitive darts as

12 they are accustomed.

13     39.    As a result of Defendants' unauthorized use of the SCDA marks,

14 Plaintiff has lost control of its reputation and goodwill.  This has and continues to

15 cause Plaintiff irreparable injury

16     40.    On information and belief, Defendants' aforesaid uses are with full

17 knowledge that Defendants are violating Plaintiff's aforesaid rights in the SCDA

18 marks.

19            **FIRST CLAIM FOR RELIEF**

20     **UNFAIR COMPETITION IN VIOLATION OF**

21        **SECTION 43(a) OF THE LANHAM ACT**

22          **(By Plaintiff Against Defendants)**

23     41.    Plaintiff re-alleges paragraphs 1 through 40, inclusive, as if fully set

24 forth herein.

25     41.    Defendants' acts have caused or are likely to cause confusion, mistake

26 or deception as to the sponsorship or approval of Defendants' services in that dart

27 players and others in this District and elsewhere in the United States are likely to

28 believe Plaintiff authorizes and controls the provision of Defendants' services in

1  the United States or that Defendants are associated with or related to Plaintiff.

2      42.    On information and belief, Defendants' acts have injured or are likely

3  to injure Plaintiff's image and reputation with Host Pubs, darts players, and darts

4  organizations in this District and elsewhere in the United States by creating

5  confusion about, and dissatisfaction with, Plaintiff's services.

6      43.    On information and belief, Defendants' acts have injured or are likely

7  to injure Plaintiff's reputation and relations with players, sponsors, and pubs in this

8  District and elsewhere in the United States by causing player dissatisfaction, a

9  diminution of the value of the goodwill associated with the SCDA marks, and a

10  loss of players and relationships with Host Pubs.

11      44.    Defendants' advertising and alleged provision of darts league services

12  in Southern California is a knowing, deliberate, intentional, and willful attempt to

13  injure Plaintiff's association, to trade on Plaintiff's reputation, to confuse or

14  deceive players, and to interfere with Plaintiff's relationships with players, clubs,

15  and Host Pubs in the United States and abroad.

16      45.    Defendants' acts constitute unfair competition with Plaintiff in

17  violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

18      46.    Defendants' acts greatly and irreparably damage Plaintiff and will

19  continue to so damage Plaintiff unless restrained by this Court; wherefore, Plaintiff

20  is without an adequate remedy at law.  Accordingly, Plaintiff is entitled to, among

21  other things, an order enjoining and restraining Defendants from using the SCDA

22  marks.

23  **SECOND CLAIM FOR RELIEF**

24  **UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA**

25  **BUSINESS & PROFESSIONS CODE SECTION 17200**

26  **(By Plaintiff Against Defendants)**

27      47.    Plaintiff re-alleges paragraphs 1 through 46, inclusive, as if fully set

28  forth herein.

1    48.    Defendants' acts constitute unfair competition in violation of

2  California Business & Professions Code § 17200 et seq.

3    49.    Defendants' acts greatly and irreparably damage Plaintiff and will

4  continue to so damage Plaintiff unless restrained by this Court; wherefore, Plaintiff

5  is without an adequate remedy at law.  Accordingly, Plaintiff is entitled to, among

6  other things, an order enjoining and restraining Defendants from using the SCDA

7  marks.

8                    **THIRD CLAIM FOR RELIEF**

9                  **TRADEMARK INFRINGEMENT IN**

10            **VIOLATION OF CALIFORNIA COMMON LAW**

11                  **(By Plaintiff Against Defendants)**

12    50.    Plaintiff re-alleges paragraphs 1 through 49, inclusive, as if fully set

13  forth herein.

14    51.    Defendants' acts constitute trademark infringement of the Plaintiff's

15  trademark rights in violation of California common law.

16    52.    Defendants' acts greatly and irreparably damage Plaintiff and will

17  continue to so damage Plaintiff unless restrained by this Court; wherefore, Plaintiff

18  is without an adequate remedy at law.  Accordingly, Plaintiff is entitled to, among

19  other things, an order enjoining and restraining Defendants from using the SCDA

20  marks.

21                  **FOURTH CLAIM FOR RELIEF**

22            **UNFAIR COMPETITION IN VIOLATION**

23                **OF CALIFORNIA COMMON LAW**

24                  **(By Plaintiff Against Defendants)**

25    53.    Plaintiff re-alleges paragraphs 1 through 52, inclusive, as if fully set

26  forth herein.

27    54.    Defendants' acts constitute unfair competition with Plaintiff in

28  violation of the common law of the State of California.

COMPLAINT

55.     Defendants' acts greatly and irreparably damage Plaintiff and will continue to so damage Plaintiff unless restrained by this Court; wherefore, Plaintiff is without an adequate remedy at law.  Accordingly, Plaintiff is entitled to, among other things, an order enjoining and restraining Defendants from using the SCDA marks.

## FIFTH CLAIM FOR RELIEF

### DILUTION IN VIOLATION OF CALIFORNIA

### BUSINESS & PROFESSIONS CODE SECTION 14247

### (By Plaintiff Against Defendants)

56.     SCDA re-alleges paragraphs 1 through 55, inclusive, as if fully set forth herein.

57.     Defendants' acts of dilution by blurring and dilution by tarnishment are likely to impair the distinctiveness and harm the business reputation and goodwill of the famous SCDA marks in violation of California Business & Professions Code § 14247.

58.     Defendants' acts greatly and irreparably damage SCDA and will continue to so damage SCDA unless restrained by this Court; wherefore, SCDA is without an adequate remedy at law.  Accordingly, SCDA is entitled to, among other things, an order enjoining and restraining Defendants from using the SCDA marks.

WHEREFORE, Plaintiff prays that:

1.     Defendants and their partners, officers, agents, servants, employees, and attorneys, their successors and assigns, and all others in active concert or participation with Defendants, be enjoined and restrained during the pendency of this action, and permanently thereafter, from using the SCDA marks.

2.     Defendants, and all others holding by, through or under Defendants, be required, jointly and severally, to:

a.     account for and pay over to Plaintiff all profits derived by

1          Defendants from their acts of trademark infringement, unfair

2          competition and dilution in accordance with 15 U.S.C.

3          § 1117(a) and the laws of California, and Plaintiff asks that this

4          profits award be trebled in accordance with 15 U.S.C.

5          § 1117(a);

6     b.   pay over to Plaintiff all damages incurred by Plaintiff by reason

7          of Defendants' acts of unfair competition and dilution in

8          accordance with 15 U.S.C. § 1117(a) and the laws of

9          California, and Plaintiff asks that this damages award be trebled

10         in accordance with 15 U.S.C. § 1117(a);

11    c.   pay to Plaintiff the costs of this action, together with reasonable

12         attorneys' fees and disbursements, in accordance with 15

13         U.S.C. § 1117(a);

14    d.   pay to Plaintiff punitive damages in accordance with the

15         common law of the State of California;

16    e.   deliver up for destruction all labels, signs, prints, packages,

17         wrappers, receptacles, and advertisements in the possession of

18         the defendant, bearing the SCDA marks in Defendants'

19         possession, in accordance with 15 U.S.C. § 1118;

20    f.   disable the website

21         www.southerncaliforniadartsassociation.com and deliver to

22         defendants that domain name;

23    g.   require Defendants to notify Association Members and Host

24         Pubs of the resolution of this matter and that Defendants have

25         no legal interest in the SCDA name or SCDA marks;

26    h.   disclaim any association with Southern California Darts

27         Association or the SCDA;

28    i.   contact the Secretary of State to change the name of Zaffina Co.

1            to something unrelated to and not confusingly similar to

2            Southern California Darts Association; and

3       j.     file with the Court and serve on Plaintiff an affidavit setting

4            forth in detail the manner and form in which Defendants have

5            complied with the terms of the injunction, in accordance with

6            15 U.S.C. § 1116.

7    3.     Plaintiff be awarded general, special, and incidental damages in an

8           amount to be proven at trial in accordance with the law of California.

9    4.     Plaintiff has such other and further relief as the Court deems just and

10          equitable.

11

12 Dated:  March 6, 2012

13                        KAWAHITO SHRAGA & WESTRICK LLP

14                        James K. Kawahito

15                        By: _____

16

17                        *Attorneys for Plaintiff Southern California Darts Association*

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

# EXHIBIT A

Los Angeles Dastardly Deeds in Darts - LA Weekly                    http://www.laweekly.com/content/printVersion/1599298/


DEALIGHTFUL!   SIGN UP TODAY   VOICE DAILY DEALS ›   Presented By LAWEEKLY

# Dastardly Deeds in Darts
## One angry man brings Southern California Darts Association to its knees

**By Chris Vogel**
published: February 02, 2012


PHOTO BY MILAN SABATA


Dino M. Zaffina, a sound man in IATSE Local 695, doesn't understand why people are angry at him. Musician Bill Lynch tried to stop Zaffina, but a judge found "no conclusive evidence of extortion."

PHOTO BY NANETTE GONZALES

It's not easy to piss off a bunch of beer-guzzling darts players. On the whole, the barroom sport, popular in Los Angeles locales like Hollywood, Santa Monica and Woodland Hills, tends to attract mild-mannered, blue-collar guys, artists and musicians — people with sure hands and a hearty sense of humor who don't really give a damn.

But Dino M. Zaffina, a squat, well-groomed darts enthusiast with a blind left eye, who possesses a law degree and an Italian sense of respect, has a talent for pissing people off. So it was in the summer of 2010 that the two sides found themselves in a standoff.

Zaffina, a fairly new member of the Southern California Darts Association, or SCDA, was unhappy that his middle initial, M, had not been included on the league's website, which showcased the players' high scores of the week. On July 18, 2010, he sent an email to the league's president, Harvey Fischer, and several members of the league, expressing his displeasure.

"I do not ever allow anyone to misspell or mispronounce my name since it is obvious by its spelling, **Dino M. Zaffina**," Zaffina wrote, according to emails given to *L.A. Weekly* by several of the darts players. "... That being said, since my name always consists of a **first name, middle initial** and **surname**, for the purpose of the SCDA **ONLY**, I have allowed the use of **D.M. Zaffina**. Therefore, if my name is ever published on the SCDA website ... I will expect it to be **spelled correctly**."

To say that Zaffina is particular about the spelling and presentation of his name would be an understatement. He spouts on about it with the same fiery passion that one would normally associate with a discussion of civil rights or religious freedom. He has been known to refuse mail that doesn't bear his middle initial, and says he is battling the powerful Hollywood industry website IMDb.com to include his middle initial on its site, which states that he appeared on two episodes of the 1980s sitcom *Alice*.

Los Angeles Dastardly Deeds in Darts - LA Weekly                     http://www.laweekly.com/content/printVersion/1599298/



Milan Sabata, left, and David Irete  Sabata got a boldfaced
email from Zaffina: "It's 12:01 a.m , past the deadline "

PHOTO BY NANETTE GONZALES



Musician Bill Lynch tried to stop Zaffina, but a judge found
"no conclusive evidence of extortion "

But regrettably, the laid-back Los Angeles darts players, including Fischer — an older gentleman with the reputation of being a wiseass — didn't understand just how serious Zaffina was. Several members of the Southern California Darts Association pooh-poohed Zaffina and, following several nasty emails and squabbles over Zaffina's name in which it was clear how obnoxious the darts players found him, Fischer mailed him a $30 refund for his membership fee and gave him the boot.

Says former SCDA board member David Irete, "He was becoming a nuisance and pain in the ass and breaking the rules. He was threatening us, so we had to kick him out. He was being a cocksucker, and you can quote me on that, please."

Fischer and the SCDA board hoped they'd never hear from Zaffina or his middle initial ever again.

But he was hardly finished in the battle that started over his "M."

Conducting a simple public-records search, he discovered the league's Achilles' heel: Established in the mid-1960s and generally accepted as the oldest British-style darts league in the United States, the Southern California Darts Association had let its incorporated status lapse in 1977. It had never been renewed. To the players, there didn't seem to be any need.

Zaffina made his move. He legally incorporated as "Southern California Darts Association," without any apparent members, anointed himself both president and CEO, and then sued nearly 60 darts players and eight stunned Los Angeles–area bars where darts are played regularly. The accusation? That the players and the eight pubs had been engaging in "trade libel" and "unlawful business practices" by using the historic name "Southern California Darts Association," which Zaffina now legally controlled.

Through the courts, Zaffina all but brought the historic league to its knees. He even got many of the amazed bar owners to ban all references to the Southern California Darts Association whenever any of the players have a game at longtime spots such as the Robin Hood Pub in Sherman Oaks and Ye Olde King's Head pub in Santa Monica.

Says one well-known bar owner who did not wish to be identified for fear of retribution, "I'm weary of being involved with this guy because he's just been firing off lawsuits. Some of us wanted to fight, but these things can be very expensive ... [so] we came to an agreement we all could live with."

Zaffina, however, doesn't understand why everyone's so angry. He warned the darts players he'd come after them, but they didn't listen.

"Who the hell is he to tell me what to do?" Fischer tells the *Weekly*. "Why is he so special? I was just posting his name the way I do for everyone else. But he went bonkers" when Fischer left out his full name.

Zaffina finds it all perfectly normal. He says the "M" stands for "Martin," that he was named after the suave Rat Pack crooner Dean "Dino" Martin, and launches into a story about how his father, who also used a middle initial and died when Zaffina was 8, drilled into him the importance of being called by his full name and demanding that everyone oblige.

"My father always told me, 'That's the way people should address you,'" Zaffina says. "... And sure enough it stuck, I'll tell you that much."

The darts players are incredulous that Zaffina was able to obtain the league's historic name and are sickened at the thought that the whole thing started over leaving Zaffina's middle initial off a list of competition scores.

"We've had the SCDA name for more than 40 years," Fischer says. "Where does this upstart get the balls to take our name? I mean, who is this guy?"

**Zaffina, 52, is a** native of Southern California. He's a studio sound man, an actor and a licensed private investigator. Zaffina was blinded in his left eye in 2008 when he inadvertently fell off a stage and into a lighting pit while working on the set of *Entertainment Tonight*. He stands out at pubs because he carries a large attaché case filled with darts when he comes to play.

Outside of that, Zaffina is mostly a mystery.

"He never talked about himself and instead asked us questions," says Milan Sabata, a former SCDA board member. "And he was very generic about his job."

Zaffina's teammate, 30-year-old musician Nick Turpin, enjoyed playing with Zaffina, calling him "an older brother type" who didn't drink and would bring the guys pizza and pasta during the games. Not at all "what he turned out to be."

As Sabata tells it, when Zaffina first started playing pickup games in 2009 with him and a few others at the Robin Hood Pub in Sherman Oaks, Zaffina "was clean-cut, well-spoken but cocky and seemed very insecure about himself. Every time he threw a bad throw, he got embarrassed with a childish grin, wanting people to tell him it was OK. His parents were Italian and he has this way of talking about respect. He takes it very seriously. ... He spells the word 'respect' with his middle initial 'M.'"

When speaking, Zaffina occasionally peppers his sentences with legal jargon, which could be explained by the fact that he has a law degree, though he is not a member of the State Bar of California. It also could have something to do with the fact that Zaffina has been part of many lawsuits.

Since 1991, according to an online search of Los Angeles Superior Court records, Zaffina has been involved in at least 22 lawsuits, 18 of them as the plaintiff. They have ranged from small-claims cases to defamation and wrongful-termination claims.

In one case, for example, he sued Target, claiming he'd injured his toe on an escalator. In another case, Zaffina sued 20th Century Fox Films over failure to pay wages in a timely manner and for allegedly having fired him unfairly from the TV show *Reba*. In 2009, Zaffina's landlord, Zahra Taherkhanchi, sought a restraining order against him, claiming the rent was late and that he had started posting notes on her door four or five times a day and threatening that someone might set her

home on fire.

"He gave me a great emotional distress," Taherkhanchi wrote in her legal complaint. "He wants to put too much pressure on me so I can have a nervous breakdown. ... I'm scared of [sic] my life."

The court found no credible threats of violence, however, and her request for a restraining order was immediately dismissed. Zaffina tells the *Weekly* he was unaware that she had filed for a restraining order.

Zaffina received some media attention in 1999, when he got into it with the International Alliance of Theatrical Stage Employees, Local 695, a union for sound technicians. According to *Variety*, Zaffina, who had been an unsuccessful candidate for the office of business representative of Local 695, alleged that his opponent wrongfully used union money to make and distribute campaign literature.

Two months later, Zaffina sued the local, the winning candidate, and another candidate who ran against him. It became a convoluted web of lawsuits and countersuits, rife with nasty accusations and allegations, stretching across many years. The sound technician union's attorney, Helena Wise — who at one point was sued for defamation by Zaffina — has trouble boiling down the complex case.

"The master complaint got disposed of," she says, "that he would not be able to set forth proper causes of action. And then he filed additional lawsuits, so it's like this never-ending saga."

Wise is reluctant to discuss Zaffina further — for fear of being sued again, except to add, "If you ever failed to include his middle initial [in a mailing], he would return the envelope unopened."

Wise is not the only one hesitant to talk to the *Weekly* about Zaffina. Several people, including former darts players and an ex-girlfriend, said they were afraid to comment or didn't want to risk the chance of letting Zaffina re-enter their lives -- and sue them. Most also warned the *Weekly* that Zaffina might sue the newspaper for writing about him.

Zaffina, however, disputes the idea that he's a litigious person, pointing to the fact that none of his lawsuits — most of which he eventually won or settled — was ever dismissed as frivolous.

"I go after people under the guidelines of the law because that's the way to do it ... ," Zaffina says. "When I have a legitimate claim against somebody, I go for it because that's the right thing to do and it's my prerogative. I live in a free country that says we have the right to seek redress of our grievances in a court of law, and thank God for that.

"I'm sure you've known plenty of passive people who just go, 'Oh well,' " he continues. "You can tell ... I'm not passive ... I'm going to do whatever the law says that I'm allowed to do."

In fact, Zaffina has even told the *Weekly* that he would sue "if anything came out wrong ..." in the story.

Zaffina's ability to inspire ire and fear, however, extends beyond the courtroom, and, as it turns out, the SCDA was not his first darts league.

In 2001, Zaffina was for a short time a board member of the Pacific Darts Association, which is based in Cypress, about 10 miles west of Anaheim.

"The last image I have of Dino is of him threatening to sue us," says Doug Tice, who's been in the Pacific league for 20 years and serves as its recording secretary. "He's a hard guy to forget."

Several members of the Pacific Darts Association declined to comment for fear of retribution.

However, according to Zaffina and the league's then-president, Richard Lawrence, everything was running along smoothly until one day a player threatened to harm one of Zaffina's teammates during a match. Zaffina says he expressed concern to the board over some liability issues related to the threats, but that the league did not take strong enough action, so he decided to leave.

When asked whether he threatened to sue the Pacific Darts Association, Zaffina says that members Lawrence and Tice are lying, or perhaps misunderstood him at the time.

"I said, 'Guys, we could be sued,' " says Zaffina. "I certainly had no grounds to go after them at that point in time."

Lawrence, however, paints a more colorful picture.

Zaffina "issued threats of suing the board himself and talked of taking away people's houses following a judgment that he surely would win," Lawrence wrote in an email to the *Weekly*. "Some people got scared. ... Fortunately for the Pacific Darts Association, Dino chose to take what for him was the high road. He left the board and actually stopped playing in the PDA."

When Zaffina was in full swing as a member of the SCDA in 2010, his fellow darts players knew nothing about his legal track record or his history with the other league. But they were about to get a crash course.

About a month after Zaffina emailed Fischer and the league complaining about the presentation of his name on the website's high-scores list, Zaffina was upset again. This time, on Aug. 18, 2010, he emailed the league to say that his middle initial was not being included on the website's moving banner displaying players' scores. His gripe sparked a flurry of email responses from league members — everything from "Dino, blow it out your ASS :)" to the more tempered, "It's extremely unlikely anyone will be mislead [sic] as to who is on the results banner."

Frustrated by Fischer's refusal to accommodate him, Zaffina reached out for help to Milan Sabata, a thick-necked, soft-spoken Czechoslovakian plumber who sat on the league's board. As Sabata tells it, Zaffina called him at least five times after 8 p.m. on Aug. 19, 2010, demanding his name be spelled correctly or removed from the SCDA website by midnight.

"Then he starts threatening me," Sabata says. "He goes, 'How would you feel if your customers go online and see that your picture is on the child molester's website?' So I say, 'Dino, how can you do that?' And he said he had a way to do it, and he scared me." (Zaffina admits that he made a comment about the sex offender registry but vehemently denies that it was a threat.)

That night, as the clock raced toward midnight, Sabata says he frantically urged Fischer to take down Zaffina's name. But Fischer was watching a movie on TV and couldn't be bothered. Maybe after the flick was over, he told Sabata.

Growing more anxious, Sabata kept checking the website to see if Zaffina's name was still there. No changes. Then Sabata received an email from Zaffina:

"It's 12:01 a.m.," it said, "**past the deadline.**"

It would be roughly another 20 minutes or so, Sabata says, before Zaffina's name was removed. At 8:15 a.m. the next day, Zaffina emailed the league, saying, "**If you continue with this foolish behavior, as you have in the past with your refusal to spell my name correctly, I sure hope the SCDA and certain individuals have enough money to sustain a defense to what will be forthcoming.**"

**On Aug. 29, 2011,** David Irete was excited as he jammed through San Fernando Valley traffic on his way to the SCDA annual meeting at the Robin Hood Pub. A camera operator on *Jeopardy!* and *Wheel of Fortune*, Irete also was a die-hard darts promoter and a member of the league's board, who was up for the position of SCDA president that very night.

As Irete neared the bar, he felt his cellphone begin to vibrate inside his pocket. He had a new email. It was not good news.

Zaffina, from whom many of the darts players and league officers had not heard in more than seven months, had blasted an email out to the SCDA members under the banner, "Press Release ... Southern California Darts Association Inc. Returns From the Dead After 34 Years."

In it, Zaffina announced that the SCDA, which had incorporated in 1966, was suspended by the state Franchise Tax Board in 1977 and now, after all these years, was finally being brought back to life by him, Dino M. Zaffina, as its new president and CEO.

"[T]he 'illegal' SCDA will no longer be operating anywhere in the United States of America," Zaffina's email read. "And, the men who claim to be board members of SCDA are devoid of any power. ... "

When Irete finished reading the message, he looked up from his phone and thought, "Holy shit, Dino has risen again."

That night at the Robin Hood, Irete, Harvey Fischer, Milan Sabata and Curtis Pierpoint, a residential construction worker, all talked briefly about Zaffina's latest news. They, along with other players, decided there was nothing they could do about it right away, so they carried on with the planned administrative matters and league elections. Irete was named president; Pierpoint won the vice president slot.

"Because of the way [Zaffina] had acted in the past," Fischer says, "I kinda took it lightly."

But to Zaffina, it had long been a serious matter.

About a year earlier, after Fischer had refunded Zaffina's league fees (Zaffina says he cleverly never cashed the check and was not kicked out of the league but rather allowed his league membership to expire at the end of the year), Zaffina asked California's secretary of state for a copy of the SCDA incorporated bylaws. He quickly discovered the SCDA's corporate status had been suspended in 1977 and that it had never been legally revived.

It's impossible to know exactly what thoughts spun through Zaffina's mind the moment he uncovered this bit of news, but on Aug. 24, 2010, he sent a four-page letter, heavily accented with bold type and underlinings, to the unincorporated league, its members and its sponsors. To Zaffina, the letter was to serve as a heads-up. It spelled out that the SCDA had been claiming to operate with the powers and rights of a corporation without actually having legal corporate status, and therefore was operating illegally and in violation of the California Revenue and Tax Code.

Again, the unincorporated SCDA members largely ignored the message.

"In our minds," Pierpoint says, "it was just another in a long line of threats. We had been unincorporated for more than 30 years and were going along just fine as a club, and so when his letter came along, we didn't think much about it."

On Jan. 3, 2011, Zaffina made his next move. He legally incorporated Southern California Darts Association and then filed four subsidiaries — SCDA, So Cal Darts Association, So Cal Darts and SCDA

Products. Zaffina would wait eight months, say many of the darts players, before telling them. However, one of the oldest and most prestigious names in the world of darts now belonged to him.

According to author and darts historian Dan William Peek, the SCDA was started by British and Irish expatriates living in the L.A. area in the late 1950s. The group incorporated in 1966 and, according to Pierpoint, swelled to nearly 5,000 members during the 1980s. The association sold merchandise, hosted two international tournaments and raked in nearly $100,000 a year.

Recent times have not been so kind. Thanks to tougher DUI laws and a ban on smoking inside bars, Pierpoint says, the unincorporated league has dwindled to roughly 100 members and brought in between $2,000 and $3,000 a year, all of which went toward paying for equipment storage and trophies at the end of each season.

None of the darts players can recall why the SCDA decided in 1977 not to renew its corporate status. Pierpoint remembers that the issue came up a couple of times during the 1990s but was always voted down.

"We didn't see any real need in it," he says. "Yes, we probably should have filed taxes, but because we're mostly blue-collar knuckleheads who just want to drink beer and throw darts and have fun, we operate more like an informal club. It was ignorant bliss until Dino came along."

After informing the players that he'd incorporated SCDA, Zaffina issued several press releases and a cease-and-desist letter urging them to stop playing matches using the SCDA name.

Finally, on Sept. 26, Zaffina filed a lawsuit against more than 60 named defendants, including Irete, Fischer and Pierpoint. Milan Sabata, who through sheer fear had helped get Zaffina's name removed from the SCDA website the year before, was conspicuously absent from the lawsuit.

Essentially, Zaffina claimed that the unincorporated league members were injuring his actual SCDA company by continuing to operate. He said he was trying to run his league as a for-profit enterprise but could not so long as the unincorporated members were using and trampling on the SCDA's good name.

The following day, Sept. 27, Zaffina fired off another press release, this one informing the defendants that they were on the hook for a $395 court filing fee and telling them how to avoid litigation and further damages.

Over the next several weeks, Zaffina bombarded the darts players with nine press releases (none of which was sent to the media). They included court deadlines, examples of burdensome discovery requests and dollar amounts for how much each defendant would be responsible for paying in order to battle him in court.

"Prepare for a lengthy and costly litigation that may possibly last in excess of two-years and cost each defendant approximately **$50,000.00**," stated one. "***There is no other possible way out***," read another.

To many, including darts player Bill Lynch, the press releases sounded like a shakedown. A successful musician, Lynch says he was furious that Zaffina was effectively destroying his beloved darts club. He had plenty of money to hire attorneys and go toe-to-toe with Zaffina in court, so Lynch decided to plunge neck-deep into the fray.

"How could anyone not see his lawsuit as malicious?" Lynch asks. "He's a menace to society and needed to be stopped."

Lynch and his lawyer, Michael Zuk, went so far as to file a cross-complaint against Zaffina, essentially accusing him of blackmail. A judge, however, struck it down, ruling that there was "no conclusive evidence of extortion."

At one point, Lynch says, he was willing to settle with Zaffina, but he asked for a deadline extension in order to have time to contact all of the numerous other defendants. He says Zaffina refused him the extension, so any potential deal fell apart.

"It's like dealing with a little kid who wants to play with his football and gets mad when the other kids are playing with their football," Zuk says. "It's like he wants to be the lone emperor of darts in Southern California."

**Why did Zaffina do it?** That seems to be the million-dollar question among the darts players.

If you ask Zaffina, he'll say he's a businessman, that he's always had some big ideas on how to run a for-profit darts league, and that snatching up the SCDA name was akin to nabbing a brand name such as Snickers or Campbell's Soup when their owners fell asleep at the wheel.

"Clearly," he stated in a court declaration, the SCDA name "is not *The Coca-Cola Company*, but what smart businessperson would not acquire a corporation under the name *The Coca-Cola Company* if that company was so foolish as to let their legal status be suspended by the state's executive branch that regulated corporations?"

Zaffina dismisses the notion that he was motivated by sour grapes, proudly explaining how he told the darts players in August 2010 that their group was not incorporated yet gallantly refrained from acquiring the name until January.

"If they're angry at me because I'm a good businessman," he says, "and because I dot all my I's and cross all my T's and I follow the law, then that's their problem. They had the opportunity for a good four months to get to a lawyer or do it themselves and renew the corporation. They should be angry at themselves, not me."

But most of the players aren't buying it, even the ones who played with Zaffina and say they liked the guy.

"Dino's managed to completely disassemble the old SCDA and ruined it for a lot of guys," says Zaffina's former teammate, Nick Turpin. "To me, it was him getting back at Harvey and these [other] guys. It's ridiculous. What a dick."

Despite his insistence that the SCDA will be a full-fledged business, Zaffina is not tipping his hand. His only disclosure appears in court papers, in which he says he plans to operate a series of steel and soft-tip darts leagues, tournaments and other darts-related ventures.

"It's going to be much bigger than anything anybody could imagine," he tells the *Weekly*. "That's all I'm going to say. The goal is much bigger than anything these people could have even fathomed."

There is some speculation among the darts players that Zaffina's endeavor, if it's real, will be conducted mostly online. After all, they say, what local is going to want to play in his league?

"I find it ironic," says Fischer, "because he says he wants to make money and promote a darts league, but all the people he's suing would be his clients. He's a bloody idiot."

As far as the players go, they share a collective sense of brotherhood and doom. Most of the pubs they play in have decided to avoid litigation and agreed to Zaffina's terms, which include making sure that

Los Angeles Dastardly Deeds in Darts - LA Weekly                 http://www.laweekly.com/content/printVersion/1599298/

no one throws darts there under the SCDA name. Some of the pubs, including Ye Olde King's Head in Santa Monica, have posted signs saying as much.

The darts players are not sure what will come of the lawsuit against them, but they know Zaffina has legally obtained the SCDA name and, on that front at least, they've been licked.

"Dino won," Irete says. "He stopped us from playing. He put fear in too many people's minds and hearts."

Says Pierpoint, "It's really sad. Dino has hurt everyone who played in the league, all because he was trying to screw a few people he was pissed at."

Irete and Pierpoint both say plans are in the works to create a new league for the darts players, complete with new schedules, a proper tax ID and, of course, a new name that will be legally incorporated.

At one point, the players wanted to start fresh under the title Los Angeles Darts Association. Sabata says he mentioned the idea over the summer at the group's annual meeting and then posted the suggestion on Facebook on Sept. 7.

Two days later, according to Internet records, Zaffina bought the domain name losangelesdartsassociation.com. Less than a month later, he also bought the .net and .org versions of the name.

Zaffina denies he ever knew about the players' intent to form under the Los Angeles moniker and says there is no proof that he saw Sabata's Facebook post or that anyone sent him a link to it.

"Even if I was clairvoyant and I knew," he says, "I still have the right to purchase them."

Which, while technically true, are exactly the kinds of words that can piss off a bunch of beer-guzzling darts players.

*Reach the writer at cvogel@laweekly.com.*



# EXHIBIT B



# EXHIBIT C



# EXHIBIT D



Home
About Us
Dart Games
Dart Leagues
League Info
Team Rankings
Players' Rankings
Dart Lessons
Tournaments
Dart Fans
Photos
Pro Talk
Pubs' Profits
SCDA Products
Publicity
Links
Contact Us

## Southern California Darts Association, Inc.

*"Providing the best dart leagues and tournaments in Southern California."*

Join us in 2012

Southern California Darts Association, Inc. is a dart player's dream, providing the best dart leagues and tournaments in Southern California.

Southern California Darts Association, Inc. and its four subsidiaries, SCDA, So Cal Darts Association, So Cal Darts, and SCDA Products will give players and fans an excellent darting experience.

We support both steel and soft tip. The 2012 dart year will furnish leagues and tournaments in both categories.

Our leagues range from youth to adult. There is plenty of dart play for all ages. The youth leagues are for ages 13-to-17. The college leagues are open to those dart players that are attending universities and community colleges. The adult leagues are for those players that are at least 21-years of age.

SCDA will maintain team rankings with individual team profiles. Each SCDA player will have his/her own ranking listed, as well as, their player profile for their fans.

So Cal Darts Association will offer steel and soft tip lessons in our flight schools. SCDA wants you to feel comfortable in your ability to play starts the correct way and enjoy hitting your target.

Those tournament dart players will not need to look any further than our website to find the right tournaments across the country. We will supply you with every geographical area.

No other leagues or tournaments in Southern California provide fans the ability to interact with their favorite dart players. So Cal Darts has devised a method for dart fans to win along with their favorite players. Your enjoyment will be endless.

*"Shoot Well!"*

Done

start    Southern California D...                                                   4:05 PM

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge R. Gary Klausner and the assigned discovery Magistrate Judge is Jay C. Gandhi.

The case number on all documents filed with the Court should read as follows:

## CV12- 1899 RGK  (JCGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==============================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
James Kawahito (SBN 234851)
KAWAHITO SHRAGA & WESTRICK LLP
1990 S. Bundy Dr., Ste. 280
Los Angeles, CA 90025

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTHERN CALIFORNIA DARTS ASSOCIATION, a California unincorporated association <br><br> PLAINTIFF(S) <br><br> v. <br><br> SOUTHERN CALIFORNIA DARTS ASSOCIATION, INC., a California corporation, DINO M. ZAFFINA, an individual, and DOES 1-10 <br><br> DEFENDANT(S). | CASE NUMBER <br><br> CV12-01899 RGK(JCGx) <br><br><br> **SUMMONS** |

TO:   DEFENDANT(S):

     A lawsuit has been filed against you.

     Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _James Kawahito_____, whose address is _1990 S. Bundy Dr., Ste. 280, Los Angeles, California 90025_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: March 6, 2012_____

By: _____
     Deputy Clerk

     *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States  Allowed 60 days by Rule 12(a)(3)]*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐) <br> SOUTHERN CALIFORNIA DARTS ASSOCIATION, a California unincorporated association | **DEFENDANTS** <br> SOUTHERN CALIFORNIA DARTS ASSOCIATION, INC , a California corporation, DINO M. ZAFFINA, an individual, and DOES 1-10 |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br> Kawahito Shraga & Westrick LLP <br> 1990 S. Bundy Dr , Ste. 280 Los Angeles, CA 90025 <br> Phone: (310) 746-5300 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U S Government Plaintiff    ☑ 3 Federal Question (U S Government Not a Party)

☐ 2 U S Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:    JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No        ☑ **MONEY DEMANDED IN COMPLAINT:** $ Greater than $100,000

**VI. CAUSE OF ACTION** (Cite the U S Civil Statute under which you are filing and write a brief statement of cause  Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. §§ 1051; 15 U.S.C. § 1125(a); B&PC § 17200; B&PC § 14247

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☑ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U S Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**CV12-01899**

**FOR OFFICE USE ONLY:**    Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
#### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                        ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                        ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                        ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | N/A |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Upon information and belief, Los Angeles County | N/A |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
    **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | Throughout the United States |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X  SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date March 6, 2012

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |