1 KAWAHITO SHRAGA & WESTRICK LLP
James K. Kawahito (No. 234851)
2 e-mail: jkawahito@kswlawyers.com
NOELLE SHANAHAN CUTTS (No. 259175)
3 e-mail: noelle@kswlawyers.com
1990 South Bundy Dr., Suite 280
4 Los Angeles, CA 90025
Telephone: (310) 746-5302
5 Facsimile: (310) 593-2520

6 ATTORNEYS FOR PLAINTIFF
SOUTHERN CALIFORNIA DARTS ASSOCIATION.
7

8 UNITED STATES DISTRICT COURT

9 FOR THE CENTRAL DISTRICT OF CALIFORNIA

10 WESTERN DIVISION

11

| | |
|---|---|
| 12 SOUTHERN CALIFORNIA DARTS ASSOCIATION, a California 13 unincorporated association,<br><br>14 Plaintiff,<br>15 vs.<br>16 SOUTHERN CALIFORNIA DARTS ASSOCIATION, INC., a California 17 corporation, DINO M. ZAFFINA, an individual, and DOES 1-10,<br>18<br>19<br>20 Defendants.<br>21<br>22<br>23 | CASE NO. 2:12-CV-01899 RGK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>[DECLARATIONS OF L. DAVID IRETE; NAOMI STRAUS; AND MATT CANALE FILED CONCURRENTLY HEREWITH; [PROPOSED] ORDER LODGED CONCURRENTLY HEREWITH]<br><br>Date: April 16, 2012<br>Time: 9:00 a.m.<br>Courtroom: 850 |

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................ 1

II.     STATEMENT OF THE FACTS ................................................................. 3

        A.     Southern California Darts Association ............................................. 3

        B.     Expungement of Defendant Zaffina From SCDA ............................ 4

        C.     Formation of Zaffina Co. ................................................................. 5

        D.     Zaffina Co. Press Releases and State Court Action.......................... 5

        E.     Evidence of Actual Confusion from Defendants' Infringing Activity 6

        F.     Evidence of Actual Harm from Defendant's Infringing Activity ...... 6

III.    ARGUMENT............................................................................................... 7

        A.     Legal Standard ................................................................................. 7

        B.     Plaintiffs Have a Strong Likelihood of Prevailing on their Claims... 7

               1.     Violation of 15 U.S.C. § 1125(a)............................................ 7

                      a.     SCDA Has Priority of Use in its Southern California
                             Darts Association Trade Name and Marks. .................. 8

                      b.     SCDA Has Established a Strong Likelihood of
                             Consumer Confusion .................................................. 11

                      c.     Defendant Zaffina Is Personally Liable For The
                             Infringing Acts........................................................... 14

                      d.     Defendants' Reliance On Its Incorporation As A Basis
                             For Its Infringing Conduct Is Without Merit............... 14

               2.     State-Law Claims.................................................................. 15

        C.     SCDA Will Suffer Irreparable Harm and Has No Adequate Remedy
               at Law If the Court Does Not Issue an Injunction ........................... 16

        D.     The Balance of Hardships Tips Heavily In Favor of SCDA ........... 17

        E.     The Injunction Will Preserve the Status Quo ................................. 18

        F.     A Bond Should Not Be Required..................................................... 18

IV.     CONCLUSION ........................................................................................ 19

# TABLE OF AUTHORITIES

**Federal Cases**

*Accuride Int'l, Inc. v. Accuride Corp.,*
871 F.2d 1531 (9th Cir. 1989)................................................................. 8

*Alpha Indust., Inc. v. Alpha Steel Tube & Shapes, Inc.,*
616 F.2d 440 (9th Cir. 1980)................................................................. 11

*Am. Petrofina, Inc. v. Petrofina of California, Inc.,*
No. CV 74-3330, 189 U.S.P.Q. 67, 82,
1975 WL 21190 (C.D. Cal. Dec. 3, 1975) *aff'd,*
596 F.2d 896 (9th Cir. 1979)................................................................. 15

*Ball v. Am. Trial Lawyers Assn.,*
14 Cal. App. 3d 289, 300-01,
92 Cal. Rptr. 228, 235 (Ct. App. 1971)................................................ 16

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.,*
174 F.3d 1036 (9th Cir. 1999).......................................................... 8, 13

*Chalk v. United States Dist. Ct.,*
840 F.2d 701 (9th Cir. 1988)............................................................... 18

*Committee for Idaho's High Desert, Inc. v. Yost,*
92 F. 3d 814 (9th Cir. 1996)................................................................ 7, 9

*Entrepreneur Media, Inc. v. Smith,*
279 F.3d 1135 (9th Cir.2002)............................................................... 12

*Freecycle Network, Inc. v. Oey,*
505 F.3d 898 (9th Cir. 2007)................................................................. 7

*GoTo.com, Inc. v. Walt Disney Co.,*
202 F.3d 1199 (9th Cir. 2000)......................................................... 11, 18

*Halicki Films, LLC v. Sanderson Sales and Mktg.,*
547 F.3d 1213(9th Cir. 2008)................................................................ 8

*Lahoti v. VeriCheck, Inc.,*
586 F.3d 1190 (9th Cir. 2009)............................................................... 8

*Mattel, Inc. v. Walking Mountain Prods.*,
   353 F.3d 792 (9th Cir. 2003)......................................................... 11

*Minnesota State Archery Ass'n I, Inc. v. Minnesota State Archery Ass'n Inc.*,
   66 U.S.P.Q.2d (BNA) 1348,
   2003 WL 1589868 (D. Minn. Mar. 20, 2003)........................................ 9, 10, 14

*Moltan Co. v. Eagle-Picher Indus., Inc.*,
   55 F.3d 1171 (6th Cir. 1995)......................................................... 19

*N. Am. Aircoach Sys. v. N. Am. Aviation*,
   231 F.2d 205 (9th Cir. 1955)......................................................... 12

*New W. Corp. v. NYM Co. of Cal., Inc.*,
   595 F.2d 1194 (9th Cir. 1979)......................................................... 8, 15

*Pipers v. Holiday Inns, Inc.*,
   No. C 79-1716 SW, 215 U.S.P.Q. 466,
   1981 WL 48158, at *3 (N.D. Cal. Mar. 17, 1981)................................. 15

*Playboy Enters., Inc. v. Chen*,
   No. CV 96–3417 DDP (VAPx) 45 U.S.P.Q.2D 1400
   1997 WL 829339 at *18 (C.D. Cal. 1997)............................................ 14

*Rearden LLC v. Rearden Commerce, Inc.*,
   597 F. Supp. 2d 1006 (N.D. Cal. 2009) ............................................. 13

*Rent-A-Center, Inc. v. Canyon Television & Appliance*,
   944 F.2d 597 (9th Cir. 1991)......................................................... 17

*Smith v. Montoro*, 648 F.2d 602 (9th Cir. 1981) ................................. 7, 14

*Steinway & Sons v. Robert Demars & Friends*,
   10 U.S.P.Q. (BNA) 954,
   1981 U.S. Dist. LEXIS 15169 (C.D. Cal. Jan. 28, 1981) ...................... 17

*Stephen W. Boney, Inc. v. Boney Services, Inc.*,
   127 F.3d 821 (9th Cir. 1997)......................................................... 8

*SunEarth, Inc. v. Sun Earth Solar Power Co.*, Ltd., No.
   11-4991 CW, 2012 WL 368677 (N.D. Cal. Feb. 3, 2012)................... 13

*Tanner Motor Livery, Ltd. v. Avis, Inc.,*
  316 F.2d 804 (9th Cir. 1963) ................................................................... 18
*Transgo, Inc. v. Ajac Transmission Parts Corp.,*
  768 F.2d at 1021 (9th Cir. 1985) ........................................................... 14
*U. S. Jaycees v. San Francisco Jr. Chamber of Commerce,*
  354 F. Supp. 61 (N.D. Cal. 1972) ............................................................ 8
*U. S. Jaycees v. San Francisco Jr. Chamber of Commerce,*
  513 F.2d 1226 (9th Cir. 1975) .................................................................. 8

**State Statutes**
CAL. BUS. & PROF. CODE § 17203 .......................................................... 16
CAL. BUS. & PROF. CODE §§ 14411, 14415 .......................................... 15

**Federal Statutes**
Lanham Act, 15 U.S.C. § 1125(a) ............................................................. 7
Lanham Act, 15 U.S.C. §1116(a) .............................................................. 7

**Other Authorities**
1 J. MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 9:6 (4th ed.) ............. 8
1 J. MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 9:8 (4th ed.) .......... 15
3 J. MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 25:24 (4th ed.) ....... 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Southern California Darts Association ("SCDA" or "Plaintiff") requests a preliminary injunction to prevent irreparable harm from the conduct giving rise to its claims for trademark infringement and unfair competition against Defendants Southern California Darts Association, Inc. ("Zaffina Co.") and Dino M. Zaffina ("Zaffina") (collectively "Defendants").  Defendants' conduct has led to actual confusion in the marketplace and should be immediately enjoined.

SCDA has operated as an unincorporated association of competitive darts enthusiasts since the early 1960s.  It is the founding member of the American Darts Organization ("ADO"), which oversees competitive darts events throughout the United States.  Since inception, SCDA has organized hundreds of darts tournaments and darts-related events.  Its events have drawn darts enthusiasts from around the world and garnered international media attention.  One of SCDA's main functions is to organize and run darts leagues for its members ("Association Members") in Southern California.  SCDA has longstanding relationships with pubs, restaurants, and social clubs throughout region (the "Host Pubs") who host league events and contribute sponsorship fees.

For nearly fifty (50) years, SCDA has used the trade name "SOUTHERN CALIFORNIA DARTS ASSOCIATION" to identify the group and to inform members and other darts enthusiasts of affiliated events.  It has also used the marks "SoCal Darts" and "SCDA," as well as various logos featuring a dart board with "Southern California Dart Association" around the perimeter (collectively, the "SCDA Marks").

In or about July 2010, Defendant Zaffina, at the time a member of SCDA, became upset about SCDA's failure to include his middle initial in the weekly league scoring reports.  A dispute with the SCDA Board ensued, and Zaffina was expelled from the association for unsportsmanlike conduct.  Unbeknownst to the

- 1 -

1   Board, in early 2011, after his expulsion, Zaffina registered a corporation with the

2   California Secretary of State under the name of a defunct entity, ***Southern***

3   ***California Darts Association, Inc.***[1]

4       From that point forward, Defendants co-opted the names "Southern

5   California Darts Association," "SCDA," and "SoCal Darts," and indicated that

6   they intended to start a competing darts league in Southern California.  They also

7   claimed to have obtained exclusive rights to the aforementioned names, and began

8   threatening Host Pubs and Association Members if they participated in any league

9   or other events under those names.  Zaffina Co. then sued fifty-nine (59)

10  Association Members and numerous Host Pubs in state court claiming that they

11  committed "trade libel" by participating in SCDA darts league events.

12      All factors lead to the conclusion that the requested injunction should issue:

13      •      The SCDA Marks have developed secondary meaning through

14  roughly fifty (50) years of continuous use throughout the United States, are

15  protectable, and are being infringed by Defendants' use of identical names and

16  marks.  As a result, Plaintiff is suffering immediate and irreparable harm.

17      •      Evidence of actual confusion exists among darts players and Host

18  Pubs who mistakenly believe Defendants are associated with Plaintiff.

19      •      The balance of hardships weighs in favor of Plaintiff.  Defendants are

20  free to develop a darts league using any name that does not mislead the public or

21  trade on the goodwill Plaintiff has built over fifty (50) years in the SCDA Marks.

22  Moreover, Defendants have not actually started a darts league.

23      Therefore, Plaintiff respectfully requests that this Court issue a preliminary

24  injunction enjoining Defendants from using the SCDA Marks, forcing them to

25  disable the internet domain names associated with their illicit use of the SCDA

26  Marks, and requiring them to inform Host Pubs of the injunction.

27  [1] For a period in the 1960's and 1970's, several members of SCDA formed a
    separate, nonprofit corporation, Southern California Darts Association, Inc.
28  However, this entity apparently went inactive in 1977.

## II.   STATEMENT OF THE FACTS

### A.   Southern California Darts Association

SCDA is an unincorporated association of competitive darts enthusiasts, operating continuously in the Southern California area since its inception in the early 1960's. (Declaration of L. David Irete ["Irete Decl."] at ¶ 2.) SCDA's purpose is to promote competitive darts and to coordinate league play, both locally and at the national and international levels. (*Id.* at ¶ 3; Ex. A.) SCDA's membership has ranged in size from a few dozen players at the club's inception in the 1960s to a high of nearly 5,000 members in the early 1980s. (*Id.* at ¶ 6.) Currently, SCDA has around one hundred (100) active members. (*Id.* at ¶ 7.) SCDA conducts regular meetings. (*Id.* at ¶ 8; Ex. B). SCDA is a member in good standing with the ADO, the governing body of organized darts in the U.S., which considers SCDA to be its founding member. (*Id.* at ¶ 9.)

Since at least 1963, SCDA has made continual use of the name Southern California Darts Association, the nickname SoCal Darts, and the acronym SCDA. (*Id.* at ¶ 10.) SCDA advertises its services on a website, www.socaldarts.com, whereby it informs members of current and future events and links to another website where it posts the scoring from the league events. (*Id.* at ¶ 12; Ex. D.) SCDA also communicates with its members through a Facebook page. (*Id.* at ¶ 13.) In the past, SCDA issued a newsletter, "Darts & Dashes." (*Id.* at ¶ 13; Ex. E, F.) These newsletters reflected SCDA's participation in darts tournaments against teams from all over the world.

SCDA has longstanding relationships with the Host Pubs located throughout Southern California. (*Id.* at ¶ 15.) For many years, until the events giving rise to this Action, these Host Pubs hosted SCDA league events and contributed annual sponsorship fees that allowed SCDA to operate. (*Id.*)

In addition to league play, SCDA participates in and organizes regional and national tournaments, and advertises these tournaments using its SCDA Marks,

1    including a logo of a dartboard with the words "Southern California Darts

2    Association" around the border. (*Id.* at ¶ 16; Exs. G, H, I, J, K, L, M.)  SCDA has

3    also sent players to international tournaments. (*Id.* at ¶ 17; Ex. N.)

4         From 1970 to 1999, SCDA organized the North American Open Darts

5    Tournament ("NAODT"), a competitive tournament entered by darts leagues from

6    around the world. (*Id.* at ¶ 18; Exs. O, P, Q.)  On the basis of its goodwill, SCDA

7    obtained sponsorships for the NAODT from large international companies such as

8    National Car Rental, Watneys of London Beer, Stroh's Beer, and Unicorn Darts.

9    (*Id.*)  SCDA plans to revive the NAODT in the near future. (*Id.* at ¶ 20.)

10        SCDA has also been acknowledged in publications by other darts

11   organizations and in a national sports magazine. (Declaration of Naomi Straus

12   ["Straus Decl."] at ¶¶ 3,4,5, Exs. A, B, C, D, E.)

13        In 1966, several members, with the permission of SCDA, formed a

14   separate, unaffiliated corporation under the name "Southern California Darts

15   Association, Inc." to also help promote darts and to run a darts store. (Irete Decl.,

16   ¶ 21, Ex. R.)  This unaffiliated corporation allowed its registration with the

17   California Secretary of State to lapse in 1977.  However, at all times pertinent

18   thereto, SCDA continued to operate as it always had.

19        **B.      Removal of Defendant Zaffina From SCDA**

20        Defendant Zaffina is a former member of SCDA. (Irete Decl. at ¶ 22.)  In

21   July and August of 2010, Zaffina became upset about how scores were computed

22   and the omission of his middle initial on SCDA score sheets. (*Id.* at ¶ 23.)  This

23   developed into a heated disagreement between him and the SCDA Board. (*Id.*)

24   As a result of this confrontation, the Board revoked Zaffina's membership by a

25   vote in in accordance with SCDA bylaws, on the basis of unsportsmanlike

26   behavior. (*Id.* at ¶ 24.)  Zaffina ceased to be a member of SCDA as of August 23,

27   2010. (*Id.* at ¶ 25.)  The circumstances surrounding Zaffina's removal from

28

1   SCDA and Zaffina's subsequent retaliatory actions have received significant press

2   coverage.[2]

3   ### C.   Formation of Zaffina Co.

4   In early 2011, Zaffina registered Zaffina Co. with the California Secretary

5   of State under the name "Southern California Darts Association, Inc." (Straus

6   Decl. at ¶ 8; Ex. H.)  SCDA's current board president, L. David Irete, was

7   unaware that Zaffina had taken such actions until the fall of 2011. (Irete Decl. at ¶

8   26.)  SCDA is informed and believes that Zaffina Co. is owned, operated,

9   managed, and run by Defendant Zaffina. (Straus Decl. at ¶ 8; Ex. H.)

10   Before forming Zaffina Co., Defendant Zaffina registered the domain name

11   www.southerncaliforniadartsassociation.com. (Straus Decl. at ¶ 9; Ex. I.)

12   Defendants then put up a website on that URL announcing that "Southern

13   California Darts Association, Inc. is a dart player's dream, providing the best dart

14   leagues and tournaments in Southern California." (Straus Decl. at ¶ 10; Ex. J.)  It

15   also notes that "Southern California Darts Association, Inc. and its four

16   subsidiaries, SCDA, So Cal Darts Association, So Cal Darts, and SCDA Products

17   will give players and fans an excellent darting experience" and that it will be

18   starting a darts league in 2012. (*Id.*)

### D.   Zaffina Co. Press Releases and State Court Action

19   In the fall of 2011, Defendants began contacting Host Pub owners and

20   Association Members, stating that Zaffina Co. owns the exclusive right to use the

21   name "Southern California Darts Association," and threatening legal action

22   against anyone using that name without Zaffina Co.'s permission, including Host

23   Pubs and Association Members. (Irete Decl. at ¶ 27.)  Many of Defendants'

24   communications have come in the form of "press releases," which are printed on

25   letterhead bearing the name "Southern California Darts Association, Inc." and the

26

---

27   [2] *See* Dastardly Deeds In Darts. Straus Decl. at ¶ 7; Ex. G; also available at

28   http://www.laweekly.com/2012-02-02/news/dino-m-zaffina-southern-california-darts-association/.

- 5 -

1   dartboard logo used on the website.  (*Id.* at ¶ 28, Exh. S.)  Defendants have issued

2   eighteen (18) press releases to date, maintaining that Zaffina Co. has exclusive

3   rights to the name "Southern California Darts Association," and touting legal

4   actions Zaffina Co. has taken or plans to take against its imagined infringers.  (*Id.*)

5          Thereafter, Zaffina Co. brought a state court action naming fifty-nine (59)

6   Association Members and eight (8) Host Pubs for playing in league events or

7   hosting those events under the banner - "Southern California Darts Association."

8   (Los Angeles Superior Court, Case No. EC 056642) ("State Court Action").  It *did*

9   *not* bring suit against SCDA in the State Court Action.  The matter has been

10  transferred to Complex Court and is awaiting the initial status conference.

11         **E.      Evidence of Confusion from Defendants' Infringing Activity**

12         Defendants' representations of ownership of the name "Southern California

13  Darts Association," and their promotion of a yet-to-be established darts league

14  under that name have engendered confusion in the darts community.  For

15  example, The Cat and Fiddle Restaurant and Pub, a longtime Host Pub, contacted

16  am SCDA member on September 18, 2011, asking "what is going on?" regarding

17  letters it had received "about SCDA name being misused and misrepresented."

18  (Declaration of Matthew Canale at ¶ 3, Ex. A.)  Organizations across the U.S.,

19  Canada, and the U.K. have also contacted SCDA and ADO asking whether there

20  have been changes to SCDA.  (*Id.* at ¶ 33; Ex. T.)  Creating further confusion,

21  Zaffina has been disseminating business cards stating he is President and CEO of

22  Southern California Darts Association.  (*Id.* at ¶ 34, Ex. T.)

23         **F.      Evidence of Actual Harm from Defendant's Infringing**

24                 **Activity**

25         As a result of the confusion caused by Defendants, many of the Host Pubs,

26  including the Cat and Fiddle, have refused to allow SCDA league play in their

27  establishments.  (*Id.* at ¶ 35.)  Host Pubs have also stopped paying SCDA

28

sponsorship fees, and in some cases, member dues. (*Id.*)  This has forced SCDA to cancel its fall 2011 season. (*Id.*)

## III.   ARGUMENT

### A.      Legal Standard

Federal Rule of Civil Procedure 65(b) and the Lanham Act, 15 U.S.C. §1116(a), provide the Court with the "power to grant injunctions, according to the principles of equity and upon such terms as the Court may deem reasonable . . . to prevent a violation under Section 1125(a) of this title."  A court may issue an interlocutory injunction if plaintiff demonstrates "'either:  (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor.'"  *Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003) (citations omitted).

### B.      Plaintiffs Have a Strong Likelihood of Prevailing on their Claims

#### 1.  Violation of 15 U.S.C. § 1125(a)

"Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), forbids the use of false designations of origin and false descriptions or representations in the advertising and sale of goods and services."  *Smith v. Montoro*, 648 F.2d 602, 603 (9th Cir. 1981).  To prevail on this claim, SCDA must show that Defendants: "(1) use[d] in commerce . . . any word, false designation of origin, false or misleading description, or representation of fact, which (2) is likely to cause confusion or misrepresents the characteristics of his or another's goods or services."  *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007).

An unincorporated association is entitled to protection of its trade name under the Lanham Act against confusing uses.  *See Committee for Idaho's High Desert, Inc. v. Yost*, 92 F. 3d 814, 818 (9th Cir. 1996).  "The fact that an organization is non-profit and sells no goods or services does not take it out of the

1 | protection of the law of trademarks, service marks and unfair competition." 1 J.
2 | MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 9:6 (4th ed.).

3 |      A party asserting a claim under Section 43(a) of the Lanham Act need not
4 | have a current trademark registration. Rather, the section broadly confers
5 | protection against infringement of unregistered marks as well as registered marks.
6 | *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 n.6
7 | (9th Cir. 1999). Actions for trade name infringement can likewise be brought
8 | under Section 43(a). *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534
9 | (9th Cir. 1989). Whether called "trade name or trademark infringement . . . unfair
10 | competition or false designation of origin, the test is identical: is there a
11 | 'likelihood of confusion?'" *New W. Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d
12 | 1194, 1201 (9th Cir. 1979).

             a.  SCDA Has Priority of Use in its Southern California Darts
                 Association Trade Name and Marks.

14 |      Trade names and unregistered marks are entitled to protection against
15 | confusing or misleading uses once they have been used in commerce. 15 U.S.C.
16 | §1125(a); *Halicki Films, LLC v. Sanderson Sales and Mktg.*, 547 F.3d 1213,
17 | 1225–26 (9th Cir. 2008). "As with the right to the trade name, the right to control
18 | use of the trademark depends on priority of use." *Stephen W. Boney, Inc. v. Boney*
19 | *Services, Inc.*, 127 F.3d 821, 829 (9th Cir. 1997). For trade names and
20 | unregistered marks, a plaintiff must also establish that its mark is either inherently
21 | distinctive, or has acquired distinctiveness through secondary meaning. *See*
22 | *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1197 (9th Cir. 2009). "The doctrine that
23 | geographic or descriptive terms can acquire a secondary meaning is well
24 | established. . . . When, by association with a business, a trade name has acquired a
25 | special significance as the name thereof, it will be protected by the courts even
26 | though it may have been a descriptive term in its original meaning." *U. S. Jaycees*
27 | *v. San Francisco Jr. Chamber of Commerce*, 354 F. Supp. 61, 75 (N.D. Cal.
28 | 1972), aff'd, 513 F.2d 1226 (9th Cir. 1975) (internal citations and quotations

omitted).

In *Committee for Idaho's High Desert, Inc. v. Yost* (hereinafter *High Desert*), the plaintiff was a non-profit environmental organization that had operated continuously under the name "Committee for Idaho's High Desert" since at least 1980. *High Desert*, 92 F. 3d 814, 819-20 (9th Cir. 1996). In 1993, a group of individuals discovered that the plaintiff had allowed its corporate standing to lapse, and formed a new corporation named Committee for Idaho's High Desert, Inc. *Id.* at 817. After incorporation, one of the individual defendants represented that he was president of the Committee, and testified at a public hearing in support of a development proposal he knew was "diametrically and publically opposed by [plaintiff]." *Id.* at 818. In light of the plaintiff's continuous and exclusive use of the trade name and the association of this name with plaintiff's services among the "relevant 'consumer' group,'" *i.e.* "members and potential members, public officials . . . and other members of the interested public," the Ninth Circuit affirmed the district court's findings that the plaintiff had established ownership, first use, and secondary meaning. *Id.* at 820, 822.

In facts nearly identical to the case at bar, a U.S. District Court in Minnesota issued a preliminary injunction against the defendant infringers who had co-opted the name of a non-profit, unincorporated association promoting archery. *Minnesota State Archery Ass'n I, Inc. v. Minnesota State Archery Ass'n Inc.*, 66 U.S.P.Q.2d (BNA) 1348, 2003 WL 1589868 (D. Minn. Mar. 20, 2003). The Court noted that the non-profit plaintiff was the "largest and oldest archery organization in Minnesota" and had been using the marks "MSAA" and "Minnesota State Archery Association" in connection with services pertaining to organized archery since its founding in 1938. *Id.* In 2002, the defendant, a disgruntled member of the organization, discovered that the plaintiff had failed to renew its non-profit corporation registration. The defendant then registered a for-profit corporation using the name "Minnesota State Archery Association, Inc." and announced that he intended to use the name to form a new archery

1  organization, and offered to license or sell the name "Minnesota State Archery
2  Association" to the plaintiff for a fee. *Id.* at *1-2. The court found that the
3  plaintiff had used the marks for years and had "obtained a measure of both
4  national and international name recognition and good will in connection with its
5  activities." *Id.* at *5-6. This created a significant likelihood of success on the
6  merits of the plaintiff's Section 43(a) claim, and the court granted its request for a
7  preliminary injunction. *Id.* at *7-8.

8  More compelling than the facts in *High Desert* and *Minnesota State*
9  *Archery Ass'n*, here, SCDA has used the name Southern California Darts
   Association and associated marks for nearly fifty (50) years and developed a
10 worldwide reputation. (Irete Decl. at ¶ 10.) SCDA is one of the oldest darts
11 organizations in California and in the United States. (Straus Decl. at ¶ 5, Ex. E.)
12 It is recognized by darts organizations across the country, and the name "Southern
13 California Darts Association" is uniquely associated with SCDA in the minds of
14 darts consumers. The recognition SCDA has received in national sports
15 magazines and on darts websites demonstrates the goodwill that it has built up in
16 the name over the years. (Straus Decl. ¶¶ 3-6 Exs. A, B, C, D, E, F.) Moreover,
17 the use of the name has been exclusive. For example, in 1981, the SCDA board
18 sent a letter to the Little People International Billy Barty Foundation, admonishing
19 it for using the SCDA initials on a poster advertising a darts tournament without
20 obtaining SCDA's permission. (Irete Decl. ¶ 11, Ex. C.) SCDA has and
21 continues to advertise its services using the Trade Name and Marks on fliers,
22 newsletters, tournament programs, and its website. (Irete Decl. ¶ 12-14, 16, Exs.
23 D, E, F, G, H, I, J, K, L, M, N.)

24 In addition to the above facts establishing the strength of SCDA's Marks in
25 the darts community, this Court may also look to Defendants' intent in selecting
26 their marks as evidence of the existence of secondary meaning. Defendants
27 intentionally adopted marks identical to the ones used by SCDA precisely for the
   stated purpose of starting a competing darts league. (Irete Decl., ¶¶ 28, 29, Ex. S;
28

- 10 -

Straus Decl., ¶ 10, Exh. J.) Similar to the facts in *High Desert*, Defendants'
intentional act in choosing the same name is compelling evidence of the existence
of a secondary meaning, as it shows they recognized the valuable goodwill in
these marks. *High Desert*, 92 F. 3d at 818.

b. SCDA Has Established a Strong Likelihood of Consumer
Confusion.

Based on its protectable interest in its name and marks, SCDA can readily
establish a Section 43(a) Lanham Act claim for unfair competition. There is no
question that Defendants are using SCDA's Marks in commerce and that a
likelihood of consumer confusion exists. Such confusion exists when
"'consumers viewing the mark would probably assume that the product or service
it represents is associated with the source of a product or service identified by a
similar mark.'" *Hollywood Athletic Club*, 938 F.Supp. 612 at 614 (quoting *Alpha
Indust., Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 443 (9th Cir.
1980)).

To determine whether there is a likelihood of confusion, courts in the Ninth
Circuit address the following *Sleekcraft* factors: (1) the similarity of the marks; (2)
the relatedness of the two companies' goods; (3) the marketing channels used; (4)
the strength of the plaintiff's mark; (5) the defendant's intent in selecting its mark;
(6) evidence of actual confusion; (7) the likelihood of expansion into other
markets; and (8) the degree of care likely to be exercised by the purchaser.
*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (citing
*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979), *abrogated in
part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792
(9th Cir. 2003)).

The first three factors, *i.e.* the similarity of the marks, the relatedness of the
goods or services, and the use of common marketing channels, constitute "the
controlling troika in the *Sleekcraft* analysis." *GoTo.com v. Disney*, 202 F.3d 1199
at 1205. In this case, (1) the SCDA Marks used by Defendants are identical in

- 11 -

sight, sound, and meaning to Plaintiff's; (2) SCDA's Marks and Defendants'
name and marks are both used in connection with services related to competitive
darts in the Southern California area; and (3) Defendants are marketing their
anticipated league through the same channels as SCDA (*e.g.* through a website,
letters, and verbal communications with host pubs).  (Irete Decl., ¶¶ 27, 28, 34;
Exs. S, U; Straus Decl. ¶ 10, Exh. J.)  Furthermore, Defendants used a logo that is
virtually identical to SCDA's logo.  (Irete Decl. ¶ 28, Exh. S.)  "The greater the
similarity between the two marks at issue, the greater the likelihood of confusion."
*Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir.2002).  Here, the
name and marks used are nearly identical.

SCDA Mark                                                    Defendants' Infringing Mark

        

    With regard to the fourth *Sleekcraft* factor, the strength of the plaintiff's
mark, for the reasons set forth above, SCDA has developed secondary meaning in
the trade name "Southern California Darts Association" and the other SCDA
Marks, and they are exceptionally strong in the darts community.  Once a mark
obtains secondary meaning, it "will be afforded as complete protection as if it
were a 'strong mark' at the inception."  *N. Am. Aircoach Sys. v. N. Am. Aviation*,
231 F.2d 205, 210 (9th Cir. 1955).

    Similarly, the fifth and sixth *Sleekcraft* factors, the defendant's intent in
selecting its mark, and evidence of actual confusion, weighs heavily in SCDA's
favor.  Here, as a former member of SCDA, there is no question that Zaffina chose

to incorporate Zaffina Co. to capitalize on SCDA's name.  Moreover, Defendants have used and continue to represent that they have the right to control the use of SCDA's Marks, thereby engendering confusion.  (Irete Decl., ¶¶ 27-35.)  At least one Host Pub contacted SCDA, questioning whether Defendants were a part of or affiliated with SCDA.  (Canale Decl. ¶ 3, Exh. A.)  Organizations across the U.S., Canada, and the U.K. have contacted SCDA and ADO asking whether there have been changes to SCDA.  (Irete Decl., ¶ 33.)[3]  Moreover, Zaffina has disseminated business cards stating he is President and CEO of Southern California Darts Association, thereby creating confusion about who is running the organization, and whether Zaffina has authority to act on behalf of SCDA.  (*Id.* at ¶ 34, Exh. U.)

As for the remaining factors, "[t]he likelihood of expansion in product lines factor" is "relatively unimportant where two companies [such as here] already compete" in common marketing channels.  *Brookfield Commn's, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1044 (9th Cir. 1999).  Moreover, Defendants have indicated their intention to organize a competitive darts league this year.  (Straus Decl. ¶ 10, Exh. J.).

Although courts should not apply the foregoing factors "mechanically," the evidence underlying the three "most important" factors which should be "examin[ed] first" (*i.e.* [1] the similarity of the marks, [2] the relatedness of the goods or services, and [3] the use of common marketing channels) weighs heavily in favor of finding a high likelihood of confusion among consumers concerning similar services marked identically in the parties' common market.  *Brookfield v. West Coast*, 174 F.3d at 1055 n.16.  Furthermore, when considered in light of the

---

[3] Even if SCDA did not have such evidence of actual confusion, the importance of the actual confusion factor "is diminished at the preliminary injunction stage of the proceedings" because "actual confusion is hard to prove, so the absence of such evidence is generally not noteworthy." *See SunEarth, Inc. v. Sun Earth Solar Power Co.*, Ltd., No. 11-4991 CW, 2012 WL 368677, at *11 (N.D. Cal. Feb. 3, 2012) (quoting *Rearden LLC v. Rearden Commerce, Inc.*, 597 F. Supp. 2d 1006, 1023 (N.D. Cal. 2009)).

evidence of Defendant's malicious intent, the remaining factors weigh heavily in SCDA's favor, and none can be said to weigh decisively against it.

Defendants' conduct therefore constitutes a violation of Section 43(a) of the Lanham Act because they are offering services under the SCDA's Marks without its consent, thus creating a likelihood of confusion, deception, or mistake that Defendants' services are provided with SCDA's approval, or that the parties are otherwise affiliated or related. *See Smith*, 648 F.2d at 604; *High Desert*, 92 F.3d at 818; *Minnesota State Archery Association I*, 66 U.S.P.Q.2d at *6.

c. Defendant Zaffina Is Personally Liable For The Infringing Acts.

Defendant Zaffina is personally liable for intentionally selecting SCDA's Marks when forming Zaffina Co., and for using SCDA's Marks in connection with competitive darts, which is likely to confuse the public. *See High Desert*, 92 F.3d at 823.  Moreover, as President and CEO of Zaffina Co., Defendant Zaffina is personally liable for any trademark infringement that he directed or authorized. *See Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d at 1021 (9th Cir. 1985) (affirming personal liability of a corporation's president and sole stockholder for acts of unfair competition that he directed and authorized); *Playboy Enters., Inc. v. Chen*, No. CV 96–3417 DDP (VAPx) 45 U.S.P.Q.2D 1400 1997 WL 829339 at *18 (C.D. Cal. 1997) (liability of sole shareholder, officer, and director of a corporation "in no way depends on piercing the corporate veil or alter ego.  It is grounded rather on the Lanham Act's reference to 'any person' who violates elements of the statute.") (citing 3 J. MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 25:24 (4th ed.))

d. Defendants' Reliance On Its Incorporation As A Basis For Its Infringing Conduct Is Without Merit.

1    The only apparent justification that Defendants have proffered for their

2  flagrant appropriation of SCDA's Marks is their theory that registering a name

3  with the California Secretary of State conferred upon them the unmitigated right

4  to use the registered name.  Defendants' position is without merit.  "Since rights to

5  a trade name, like a trademark, arise from prior usage, the fact that a junior user

6  obtained a fictitious name certificate or has a corporate charter for his name is no

7  defense to an action for unfair competition or trade name infringement brought by

8  the owner of a prior conflicting trade name." *Am. Petrofina, Inc. v. Petrofina of*

9  *California, Inc.*, No. CV 74-3330, 189 U.S.P.Q. 67, 82, 1975 WL 21190 (C.D.

10  Cal. Dec. 3, 1975) *aff'd*, 596 F.2d 896 (9th Cir. 1979).  In California, filing of

11  articles of incorporation or fictitious business names establishes only a *rebuttable*

12  presumption that the registrant is entitled to use its name.  *See* CAL. BUS. & PROF.

13  CODE §§ 14411, 14415.  This presumption may be rebutted by proof of Plaintiff's

14  common law rights to the name.  *Pipers v. Holiday Inns, Inc.*, No. C 79-1716 SW,

15  215 U.S.P.Q. 466, 1981 WL 48158, at *3 (N.D. Cal. Mar. 17, 1981) *aff'd*, 685

16  F.2d 445 (9th Cir. 1982); *see also* 1 J. MCCARTHY, TRADEMARKS AND UNFAIR

17  COMPETITION § 9:8 (4th ed.) ("Since rights to a corporate name, like a trademark,

18  arise from prior usage, the fact that a junior user has a corporate charter for his

   name is no defense").

19    Because SCDA has established rights to its trade name and other marks

20  through fifty years of continual use, Defendants' claim that it can usurp those

21  rights simply by registering a similar name with the California Secretary of State

22  is without merit.

23         2.    *State-Law Claims*

24    The conduct described above – federal trademark infringement and federal

25  unfair competition – constitutes violations of California Business & Professions

26  Code § 17200 as well as common law unfair competition under California law.

27  *New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979).

28

SCDA's state law claims similarly provide for injunctive relief. *See, e.g.*, CAL. BUS. & PROF. CODE § 17203 ("Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction."). "In California a non-profit organization may maintain a suit for 'unfair competition' to protect its tradename." *Ball v. Am. Trial Lawyers Assn.*, 14 Cal. App. 3d 289, 300-01, 92 Cal. Rptr. 228, 235 (Ct. App. 1971).

The analysis for SCDA's federal and state law causes of action focuses on the same central issue: likelihood of confusion. "As a general matter, trademark claims under California law are 'substantially congruent' with federal claims and thus lend themselves to the same analysis." *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1100 (9th Cir. 2004) (citation omitted); *Accuride Intern., Inc. v. Accuride Corp.*, 871 F.2d 1531, 1538 (9th Cir. 1989) ("[Plaintiff's] causes of action for statutory unfair competition under Cal. Bus. & Prof. Code §17200 and for common law unfair competition are similarly dependent upon a showing of likelihood of confusion."). The same arguments, evidence, and authorities relied upon above are equally applicable to SCDA's state law claims.

**C.     SCDA Will Suffer Irreparable Harm and Has No Adequate Remedy at Law If the Court Does Not Issue an Injunction**

The preliminary injunction standard further requires SCDA to show it is "likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008).

The likelihood of "irreparable injury may be presumed from a showing of likelihood of success on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009) (quoting *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1038 (9th Cir. 2003). More specifically, "once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the

1  plaintiff will suffer irreparable harm." *Vision Sports, Inc. v. Melville Corp.*, 888

2  F.2d 609, 612 n.3 (9th Cir. 1989).

3      In this case, SCDA has established a high likelihood of confusion on all of

4  its claims, and this, in itself, should satisfy the requirement for irreparable harm.

5  But even without the benefit of such a presumption, SCDA can affirmatively

6  establish its risk of suffering immediate, on-going, and irreparable harm.

7      First, many Host Pubs have already revoked their sponsorships and asked

8  Association Members not to play under the SCDA trade name, on the basis of

9  Defendants' representations that Zaffina Co. "owns" the name. (Irete Decl., ¶¶

10  32.) This has stymied Plaintiff's main purpose, which is to organize competitive

11  darts play. Moreover, SCDA has lost and continues to lose the monetary benefit

12  of the sponsorship fees, and, in some cases, member dues paid by Host Pubs. (*Id.*

   at ¶ 35.) As a result, SCDA had to cancel the fall 2012 league. (*Id.*)

13      In addition, SCDA has spent decades developing the goodwill and

14  reputation of its darts services. (Irete Decl., ¶¶ 2-5.) SCDA suffers irreparable

15  harm because the value of its reputation is diminished as a result of Defendants'

16  conduct. Defendants are also interfering with SCDA's ability to control the

17  reputation of SCDA's trade name as well as the public perception of SCDA's

18  services. (Irete Decl., ¶ 36.) If Defendants are left unchecked, SCDA will

19  encounter great difficulty restoring and maintaining its goodwill and reputation

20  with the public—which, by its very nature, is an irreparable injury. *Steinway &*

21  *Sons v. Robert Demars & Friends*, 10 U.S.P.Q. (BNA) 954, 1981 U.S. Dist.

22  LEXIS 15169, *20-21 (C.D. Cal. Jan. 28, 1981) ; *see also Rent-A-Center, Inc. v.*

23  *Canyon Television & Appliance*, 944 F.2d 597, 603 (9th Cir. 1991) ("[I]ntangible

24  injuries, such as damage to … goodwill, qualify as irreparable harm").

25  **D.      The Balance of Hardships Tips Heavily In Favor of SCDA**

26      Traditional principles of equity also involve an analysis of the relative

27  balance of hardships between SCDA and Defendants. On the one hand, Plaintiff

28

has shown both (1) its investment in establishing reputation and goodwill among the darts community in the United States and abroad, as well as (2) actual confusion caused by Defendants' infringing activities and threat of ongoing consumer confusion.  For these reasons, allowing Defendants to market similar services through the use of marks that are identical to SCDA's established trade name and SCDA marks would impose a significant hardship.

On the other hand, issuing a preliminary injunction would only preclude Defendants from marketing or advertising their services as "Southern California Darts Association" and the related trade names used by SCDA.  However, they would be free to market their new, for-profit darts league under other, unrelated names.  As Defendants have not yet established any league play, they could easily change their website and other promotional materials to reflect another name.

For these reasons, the balance of hardships tips in SCDA's favor and the injunction should be issued on these grounds as well.

### E.    The Injunction Will Preserve the Status Quo

One of the purposes of an interim injunction is to preserve the status quo. *Chalk v. United States Dist. Ct.*, 840 F.2d 701, 704 (9th Cir. 1988).  The injunction here will serve to preserve the status quo *ante litem*—*i.e.*, the status at the time when Defendants were not using Plaintiff's Southern California Darts Association's marks without SCDA's consent. *GoTo.com v. Disney*, 202 F.3d at 1210 ("The status quo *ante litem* refers not simply to any situation before the filing of the lawsuit, but instead to 'the last uncontested status which preceded the pending controversy.'") (citing *Tanner Motor Livery, Ltd. v. Avis, Inc.,* 316 F.2d 804, 809 (9th Cir. 1963)).

### F.    A Bond Should Not Be Required

Under Federal Rule of Civil Procedure 65(c), the Court has wide discretion in setting a bond as a condition to preliminary injunctive relief, including the option of not requiring a bond at all. *See, e.g., Moltan Co. v. Eagle-Picher Indus.,*

- 18 -

1  *Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (affirming district court's refusal to

2  require any bond based on "the strength of [plaintiff's] case and the strong public

3  interest involved").  Given the high likelihood of success on the merits as

4  demonstrated above, SCDA should not be required to post a bond.  Moreover,

5  SCDA is a non-profit association with a miniscule operating budget, and it would

6  invoke an undue hardship if it were required to post one.  (Irete Decl., ¶ 37.)

7  **IV.    CONCLUSION**

8      Therefore, SCDA respectfully requests that this Court issue an Order

9  enjoining Defendants, pending final judgment in this matter, from:  (1) using the

10  SCDA Marks in any manner; (2) using any internet or other URLs containing the

11  words "Southern California Darts Association," "SCDA," or "SoCal Darts"; (3)

12  representing to the public, including but not limited to Association Members and

13  Host Pubs, that Defendants have rights to the SCDA Marks.  SCDA also requests

14  that the order affirmatively require Defendants to: (1) file a notice of

15  discontinuance of the trade name or a change of corporation name with the

16  Secretary of State; and (2) issue a notice to the Host Pubs, Association Members,

17  and other darts organizations containing a fair summary of this court's decision,

18  attached to the Proposed Order as Exhibit A.

19  Dated:  March 19, 2012

20                              KAWAHITO SHRAGA & WESTRICK LLP
21                              James K. Kawahito

22                              By:  /s/ James Kawahito
23                              *Attorneys for Plaintiff Southern California Darts*
                                *Association*
24

25

26

27

28
                              - 19 -