UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-01899-RGK (JCGx) | Date | April 23, 2012 |
|---|---|---|---|
| Title | *SOUTHERN CALIFORNIA DARTS ASSOC. v. SOUTHERN CALIFORNIA DARTS ASSOC., INC. et al* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| R. Neal for Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(IN CHAMBERS) Order Re: Plaintiff's Motion for Preliminary Injunction (DE 8)**

## I.     INTRODUCTION

On March 6, 2012, Southern California Darts Association ("Plaintiff") filed suit against Southern California Darts Association, Inc. and Dino M. Zaffina ("Zaffina") (collectively, "Defendants") for: (1) violation of § 43(a) of the Lanham Act, (2) violation of California Business and Professions Code § 17200 *et seq.*, (3) common law trademark infringement, (4) unfair competition, and (5) violation of California Business and Professions Code § 14247.

On March 19, 2012, Plaintiff filed a Motion for a Preliminary Injunction ("Motion") pursuant to Federal Rule of Civil Procedure 65(b) and the Lanham Act, 15 U.S.C. § 1116(a). For the following reasons, the Court **GRANTS** Plaintiff's Motion.

## II.     FACTUAL BACKGROUND

Plaintiff is one of the oldest darts organizations in California and the United States. Plaintiff is a member in good standing with American Darts Organization, the governing body of organized darts in the United States, which considers Plaintiff to be its founding member. (Irete Decl. ¶ 9.) Plaintiff's purpose is to promote competitive darts and to coordinate league play, both locally and at the national and international levels. (*Id.* at ¶ 3; Ex. A.) Plaintiff has longstanding relationships with pubs, restaurants, and social clubs throughout the region (the "Host Pubs") who host league events and contribute sponsorship fees.

Since its inception in the early 1960s, Plaintiff has used the name "Southern California Darts Association," the nickname "SoCal Darts," the acronym "SCDA," and a logo featuring a dart board with Southern California Darts Association around the perimeter in the promotion and advertising of its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-01899-RGK (JCGx) | Date | April 23, 2012 |
|---|---|---|---|
| Title | *SOUTHERN CALIFORNIA DARTS ASSOC. v. SOUTHERN CALIFORNIA DARTS ASSOC., INC. et al* | | |

services (collectively, "Plaintiff's Marks" or "Marks"). (Pl's Mot. Prelim. Inj. 3:13-14.) For a period of time in the 1960s and 1970s, several members of Plaintiff formed a corporation, "Southern California Darts Association, Inc.," which went inactive in 1977 ("Defunct Corporation"). Plaintiff maintains that this corporation was a separate entity from Plaintiff.

Zaffina is a former member of Plaintiff. (Zaffina Decl. ¶ 2.) In July 2010, Zaffina became upset about Plaintiff's failure to include his middle initial in Plaintiff's weekly league scoring reports. Subsequently a dispute arose between Zaffina and Plaintiff's board members. As a result, Zaffina's membership with Plaintiff was discontinued.[1]

On January 3, 2011, Zaffina registered a corporation with the California Secretary of State under the name Southern California Darts Association, Inc. ("Corporation"), naming himself the President and CEO of the Corporation. Zaffina registered the domain name www.southerncaliforniadartsassociation.com and put up a website on that URL.

On August 29, 2011, in a press release via e-mail, Defendants provided notice of the Corporation's legal status to approximately 300 individuals and business entities, including Plaintiff's members and some of the Host Pubs. Defendants claimed that they have acquired exclusive right to use the name Southern California Darts Association.

On September 26, 2011, Defendants filed a state court action against multiple defendants, including some of Plaintiff's members and some of the Host Pubs, for playing in league events or hosting those events under Plaintiff's Marks. That action is currently pending in state court.

## III.   JUDICIAL STANDARD

"[I]njunctive relief [is] as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). For a court to grant preliminary injunction, the plaintiff must establish (1) likelihood of success on the merits, (2) likelihood of irreparable harm in the absence of preliminary relief, (3) balance of equities that tips in his favor, and (4) public interest that favors injunction. *Id.* at 20.

## IV.   DISCUSSION

Plaintiff argues that the Court should issue a preliminary injunction because the elements for injunctive relief are met. Defendants argue that Plaintiff lacks capacity to maintain this action. In the alternative, Defendants argue that the Court should deny Plaintiff's request for a preliminary injunction because Plaintiff does not satisfy the elements for injunctive relief. The Court will address each argument in turn.

---

[1] It is unclear whether Zaffina voluntarily resigned from Plaintiff or was expelled.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-01899-RGK (JCGx) | Date | April 23, 2012 |
|---|---|---|---|
| Title | *SOUTHERN CALIFORNIA DARTS ASSOC. v. SOUTHERN CALIFORNIA DARTS ASSOC., INC. et al* | | |

### A.    Capacity To Sue

Defendants argue that Plaintiff lacks capacity to bring any claim in this Court because Plaintiff is the same entity as the Defunct Corporation. Specifically, Defendants contend that California law prohibits a suspended corporation "to sue or defend any action in court."[2] (Defs' Opp'n 6.)

Generally, a corporation's capacity to sue or be sued is determined by the law under which it was organized. Fed. R. Civ. P. 17(b)(2). In California, a corporation whose powers have been suspended for nonpayment of the corporate franchise tax lacks capacity to sue or defend an action in California courts. Cal. Rev. & Tax. Code § 23301. However, it is well established that under Federal Rule of Civil Procedure 17(b)(3)(A), any incapacity a party may have under state law does not prevent or adversely affect that party's rights to bring an action in federal courts to enforce rights created by federal law. *Sierra Ass'n for Env't v. F.E.R.C.*, 744 F.2d 661, 662 (9th Cir. 1984); *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 820 (9th Cir. 1996).

Although Plaintiff asserts both state and federal claims against Defendants, Plaintiff seeks a preliminary injunction primarily under Federal Rule of Civil Procedure 65(b) and § 1116(a) of the Lanham Act. Therefore, Plaintiff's capacity to assert a claim under the Lanham Act is the only threshold issue Plaintiff must overcome for purposes of the motion currently before the Court. As such, the Court need not, and does not, address Plaintiff's capacity to bring the state law claims asserted against Defendants.[3]

As to Plaintiff's Lanham Act claim, Federal Rule of Civil Procedure 17(b)(3)(A) permits a partnership or other unincorporated association to sue in its common name to enforce a substantive right existing under the United States Constitution or laws, notwithstanding the lack of such capacity under state law. Federal courts have defined an unincorporated association as "a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common objective." *Comm. for Idaho's High Desert, Inc.*, at 820 (citation and internal quotations omitted).

Here, Plaintiff's relationship to the Defunct Corporation has no bearing on its ability to bring federal claims in federal courts. Plaintiff clearly meets the definition of an unincorporated association because it is comprised of a voluntary group of individuals, without a charter, formed to promote darts and dart related activities. Because Plaintiff's Lanham Act claim arises under federal law, Plaintiff has

---

[2] For the purposes of analyzing Plaintiff's capacity to maintain its federal trademark infringement claim, the Court will assume that Plaintiff is the same entity as the Defunct Corporation, which lost its charter in 1977.

[3] The Court notes that Defendants raise the same challenge to Plaintiff's state law claims in their Motion to Dismiss, scheduled for hearing on May 7, 2012.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-01899-RGK (JCGx) | Date | April 23, 2012 |
|----------|------------------------|------|----------------|

| Title | *SOUTHERN CALIFORNIA DARTS ASSOC. v. SOUTHERN CALIFORNIA DARTS ASSOC., INC. et al* |
|-------|-----------------------------------------------------------------------------------|

capacity to sue as an unincorporated association and any incapacity under California law is irrelevant. *See Comm. for Idaho's High Desert, Inc.*, at 818 (affirming a district court's refusal to dismiss a defunct corporation's federal claims, ruling that any corporate disability under state law did not preclude the defunct corporation from suing in federal court to vindicate rights under federal trademark and unfair competition laws).

### B. **Request for a Preliminary Injunction**

As previously mentioned, for a court to grant a preliminary injunction, the plaintiff must establish (1) likelihood of success on the merits, (2) likelihood of irreparable harm in the absence of preliminary relief, (3) balance of equities that tips in his favor, and (4) public interest that favors injunction. *Winter*, 555 U.S. at 20. The Court will examine each element in turn.

#### 1. *Likelihood of Success on the Merits*

First, Plaintiff must establish that it is likely to succeed on the merits of its trademark infringement claim under the Lanham Act. To prevail on this claim, Plaintiff must show that (1) it has a valid, protectable trademark, and (2) the alleged infringer's use of the mark is likely to cause confusion. *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007).

##### a. *Valid and Protectable Trademark*

There are three ways in which a plaintiff can establish that it has a valid, protectable trademark: "(1) it has a federally registered mark in goods or services; (2) its mark is descriptive but has acquired a secondary meaning in the market; or (3) it has a suggestive mark, which is inherently distinctive and protectable." *Id*. at 969-70.

Plaintiff does not have a federally registered trademark, and therefore is not entitled to the presumption of validity that registration confers. However, Plaintiff argues that Southern California Darts Association is a valid and protectable trademark, as it has developed a secondary meaning in the market.[4]

Whether a mark has acquired a secondary meaning "depends upon its use in relation to goods, business[es] or service[s] to the point where the public identifies the name with a particular individual or entity." *N. Am. Aircoach Sys. v. N. Am. Aviation*, 231 F.2d 205, 210 (9th Cir. 1955). In the Ninth Circuit,

---

[4] Defendants argue that the mark is not entitled to protection because it is merely a geographic description. However, geographically descriptive terms can acquire a secondary meaning. *See Comm. for Idaho's High Desert, Inc.*, at 821 (finding that "Committee for Idaho's High Desert" was a geographically descriptive term that had acquired a secondary meaning).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-01899-RGK (JCGx) | Date | April 23, 2012 |
|---|---|---|---|
| Title | *SOUTHERN CALIFORNIA DARTS ASSOC. v. SOUTHERN CALIFORNIA DARTS ASSOC., INC. et al* | | |

"[p]roof of exact copying [by the defendant], without any opposing proof, can be sufficient to establish a secondary meaning." *Comm. for Idaho's High Desert, Inc.*, 92 F.3d at 823 (quoting *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1016 (9th Cir. 1985)). Other factors that the Court may consider in determining whether Plaintiff's Marks have acquired a secondary meaning are the length and manner of use of the marks, and whether use of the marks has been exclusive. *Transgo, Inc.*, 768 F.2d at 1015.

Defendants do not dispute Plaintiff's priority of use of the Marks or the secondary meaning that the Marks have developed.[5] In fact, Defendants admit that they have exactly copied Plaintiff's approximately 50-year old Marks precisely because of the Mark's reputation. (Zaffina Decl. ¶ 10.) ("Since early 2010, I had planned to form a dart business . . . . It is not everyday that a business established approximately 50-years ago was [sic] available. . . . [W]hat smart business person would not acquire a Corporation under the name *The Coca Cola Company* if that company was so foolish as to let their legal status be suspended . . . ?") This evidence of intentional and deliberate copying, in conjunction with the fact that Defendants adopted a name identical to Plaintiff's, provide strong support for finding of a secondary meaning. *See Comm. for Idaho's High Desert, Inc.*, 92 F.3d at 821 (the district court's finding that the alleged infringer knowingly, intentionally, and deliberately adopted and used plaintiff's term offered strong support for the finding of a secondary meaning).

Therefore, Plaintiff is likely to establish that it has a valid, protectable trademark.

      b.    *Likelihood of Confusion*

According to the Ninth Circuit, "[t]he core element of trademark infringement is the likelihood of confusion, *i.e.,* whether the similarity of the marks is likely to confuse customers about the source of the products." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992). To determine whether there is a likelihood of confusion, courts utilize the *Sleekcraft* factors: (1) strength of the mark, (2) relatedness of services, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) type of goods and the degree of care likely to be exercised by the purchaser, (7) defendant's intent in selecting the mark, and (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003).

A showing of all the factors in plaintiff's favor is not required. *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1391 (9th Cir. 1993). The factors are "best understood as simply providing helpful

---

[5] Defendants simply argue that Plaintiff does not have a valid trademark because it has not registered its Marks with the United States Patent and Trademark Office ("PTO"). However, registration with the PTO is but one way of acquiring a valid, protecable trademark. *Applied Info. Scis. Corp.*, 511 F.3d at 969.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-01899-RGK (JCGx) | Date | April 23, 2012 |
|----------|------------------------|------|----------------|

| Title | *SOUTHERN CALIFORNIA DARTS ASSOC. v. SOUTHERN CALIFORNIA DARTS ASSOC., INC. et al* |
|-------|-----------------------------------------------------------------------------------|

guideposts." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010). Thus, instead of mechanically determining the number of factors that weigh in favor of each party, the court must consider what the analysis of the factors, as a whole, reveals about the likelihood of consumer confusion. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002).

The Court has considered each of the eight *Sleekcraft* factors, with some being of greater weight than others. The Court will discuss the following three factors, as they are most relevant to the Court's determination: (1) similarity of the marks, (2) relatedness of services, and (3) use of common marketing channels. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (noting that similarity of the marks, relatedness of services, and use of common marketing channels constitute "the controlling troika in the *Sleekcraft* analysis").

        i.        Similarity of the Marks

The Ninth Circuit has developed three axioms that apply to the similarity analysis: 1) marks should be considered in their entirety and as they appear in the marketplace; 2) similarity is best adjudged by appearance, sound, and meaning; and, 3) similarities weigh more heavily than differences. *Entrepreneur Media, Inc.*, 279 F.3d at 1144. "[T]he greater the similarity between the two marks at issue, the greater the likelihood of confusion." *GoTo.com, Inc.*, 202 F.3d at 1206.

Here, considering them in their entirety, the Court finds that the marks Defendants adopted to identify their organization are identical in appearance, sound, and meaning to Plaintiff's Marks. Since inception, Plaintiff has identified its organization using the following marks: "Southern California Darts Association," "SCDA," "SoCal Darts," and a logo featuring a dart board with "Southern California Dart Association" around the perimeter. Defendants use identical marks to identify their corporation, including the name Southern California Darts Association, Inc., the acronym SCDA, and a logo featuring a dart board with Southern California Darts Association around the perimeter.

        ii.       Relatedness of Services

In addition, Plaintiff and Defendants offer identical services. One of Plaintiff's main functions is to organize and run competitive darts leagues for its members in Southern California. (Pl.'s Mot. Prelim. Inj. 1:14-16.) Defendants also formed their organization to conduct darts leagues and tournaments. (Zaffina Decl. ¶ 10.)

        iii.      Use of Common Marketing Channels

Both Plaintiff and Defendants use the Web as a substantial marketing and advertising channel, "a factor that courts have consistently recognized as exacerbating the likelihood of confusion." *Brookfield Comm'cns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1057 (9th Cir. 1999). The Ninth Circuit has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-01899-RGK (JCGx) | | Date | April 23, 2012 |
|---|---|---|---|---|
| Title | *SOUTHERN CALIFORNIA DARTS ASSOC. v. SOUTHERN CALIFORNIA DARTS ASSOC., INC. et al* | | | |

repeatedly stated "that the Web, as a marketing channel, is particularly susceptible to a likelihood of confusion since . . . it allows for competing marks to be encountered at the same time, on the same screen." *GoTo.com, Inc.*, 202 F.3d at 1207. In addition to the Web, both Plaintiff and Defendants use letters and verbal communications with the Host Pubs to promote their events.

In light of the foregoing, the Court finds that the analysis of *Sleekcraft* factors, as a whole, weighs in favor of granting Plaintiff's Motion.

        c.      *Defendants' Affirmative Defenses*

In an attempt to stymie Plaintiff's preliminary injunction, Defendants raise two equitable defenses: laches and abandonment. "Because the burdens at the preliminary injunction stage track the burdens at trial, once the moving party has carried its burden of showing a likelihood of success on the merits, the burden shifts to the non-moving party to show a likelihood that its affirmative defense will succeed." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007) (citations and internal quotations omitted). The Court will examine each defense in turn.

As to the first affirmative defense, the Ninth Circuit has allowed laches to bar trademark infringement cases "only where the trademark holder knowingly allowed the infringing mark to be used without objection for a lengthy period of time." *GoTo.com, Inc.*, 202 F.3d at 1209 (citations and internal quotations omitted). Here, Defendants notified Plaintiff of their registration of Southern California Darts Association, Inc., on August 29, 2011. (Zaffina Decl. ¶13.) Plaintiff filed its complaint within a few months. This delay of only a few months is insufficient to bar Plaintiff's trademark infringement claim. *See, e.g., GoTo.com, Inc.*, 202 F.3d at 1209 (finding that 6 months delay did not bar plaintiff's trademark infringement claim).

As to the second affirmative defense, Defendants argue that Plaintiff abandoned the use of its name and marks "when it was statutorily dissolved." In the alternative, Defendants argue that Plaintiff abandoned its marks after it was notified of Defendants' registration. The Court finds no merit to Defendants' arguments.

A mark is abandoned for non-use "[w]hen its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. Defendants must strictly prove abandonment. *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 935 n.2 (9th Cir. 2006). "Because a finding of abandonment works an involuntary forfeiture of rights, federal courts uniformly agree that defendants asserting an abandonment defense face a 'stringent,' 'heavy,' or 'strict burden of proof.'" *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1175 (11th Cir.2002). Defendants have not proffered sufficient evidence to meet this heavy burden of proof.

In sum, the Court finds that Defendants' affirmative defenses are unlikely to succeed. As such, Plaintiff is likely to succeed on the merits of its trademark infringement claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-01899-RGK (JCGx) | Date | April 23, 2012 |
|---|---|---|---|
| Title | *SOUTHERN CALIFORNIA DARTS ASSOC. v. SOUTHERN CALIFORNIA DARTS ASSOC., INC. et al* | | |

2.     <u>*Irreparable Harm in the Absence of Preliminary Relief*</u>

Having established that it is likely to succeed on the merits of its trademark infringement claim, Plaintiff next must establish that it is likely to suffer irreparable harm in the absence of preliminary relief. *Winter*, 555 U.S. at 20.

In the past, courts would presume irreparable harm from a showing of likelihood of success on the merits. *See Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 627 (9th Cir. 2003). However, by recently announcing that "*Elvis* has left the building," the Ninth Circuit overturned its "long-standing practice of presuming irreparable harm upon the showing of likelihood of success on the merits." *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995 (9th Cir. 2011). Accordingly, Plaintiff must affirmatively establish its risk of suffering irreparable harm.

Plaintiff has shown that it is likely to suffer irreparable harm in the absence of preliminary relief. Plaintiff has offered evidence to show that many Host Pubs have revoked their sponsorship of Plaintiff and asked Plaintiff's members not to play in their establishments under Plaintiff's Marks. (Irete Decl. ¶ 32.) As a result, Plaintiff has been forced to cancel its Fall 2012 league. (*Id.* at ¶ 35.) Defendants' operation has caused Plaintiff to lose the monetary benefit of sponsorship fees and membership dues, and could force Plaintiff to cancel its future leagues.

Thus, Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief.

3.     <u>*Balance of Equities and Public Interest*</u>

Finally, a plaintiff seeking preliminary relief must establish that the balance of equities tips in her favor and an injunction is in the public interest. *Winter*, 555 U.S. at 19-20.

Here, the Court finds that the balance of equities tips in Plaintiff's favor. Defendants concede that they are second-comers to the marketplace intentionally trying to trade upon the efforts and goodwill established by Plaintiff. (Zaffina Decl. ¶ 10.) Defendants' actions in adopting and maintaining a confusingly similar mark were intentional because Defendants had actual knowledge of the similarity between their marks and Plaintiff's Marks. Thus, Defendants have brought upon themselves any injury that they may suffer from an injunction. Moreover, it is uncontroverted that Defendants have not yet established any darts leagues or tournaments. As such, to comply with a preliminary injunction, Defendants would not be forced to cancel any ongoing events; they simply would have to promote their services using a different name.

Furthermore, an injunction is in the public interest. "The public interest inquiry primarily addresses impact on non-parties rather than parties." *Sammartano v. First Judicial Dist. Ct., in & for Cnty. of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002). Courts often address this factor in terms of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-01899-RGK (JCGx) | | Date | April 23, 2012 |
|---|---|---|---|---|
| Title | *SOUTHERN CALIFORNIA DARTS ASSOC. v. SOUTHERN CALIFORNIA DARTS ASSOC., INC. et al* | | | |

public's right not to be confused. *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 (9th Cir. 2009).

Here, Plaintiff has demonstrated that an injunction is in the public interest. Plaintiff has shown that it has spent considerable time, energy, and money to have the public associate its services with the name Southern California Darts Association. By using confusingly similar marks, Defendants are depriving darts enthusiasts of their ability to distinguish among the services of Plaintiff and those of Defendants. As the public has a right not to be confused, the public interest and goals of the Lanham Act favor an injunction in this case.

In light of the foregoing, the Court finds that the balance of equities tips in Plaintiff's favor and an injunction is in the public interest.

## VI.   EVIDENTIARY OBJECTIONS

In deciding whether to issue a preliminary injunction, a district court may consider all the evidence before it, including hearsay evidence. *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). To the extent the Court has cited evidence to which the parties object, those objections are overruled.

## VII.   CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff's Motion. Plaintiff is not required to post bond. The Court enjoins Defendants, pending final judgment in this case, from: (1) using Plaintiff's Marks in any manner; (2) using any internet or other URLs containing the words "Southern California Darts Association," "SCDA," or "SoCal Darts;" and (3) representing to the public, including but not limited to Plaintiff's members and the Host Pubs, that Defendants have rights to Plaintiff's Marks.

**IT IS SO ORDERED.**

|  |  | : |  |
|---|---|---|---|
| Initials of Preparer | slw | | |