UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-01899-RGK (JCGx) | | Date | February 22, 2013 |
|---|---|---|---|---|
| Title | SOUTHERN CALIFORNIA DARTS ASS'N v. SOUTHERN CALIFORNIA DARTS ASS'N, INC. | | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams (Not Present) | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| Not Present | | Not Present | |

**Proceedings:** (IN CHAMBERS) Order Re: Plaintiff's Motion for Partial Summary Judgment (DE 82)

## I. INTRODUCTION

On March 6, 2012, Southern California Darts Association ("Plaintiff") filed suit against Southern California Darts Association, Inc. ("Corporation") and Dino M. Zaffina ("Zaffina") for, among other things, violation of § 43(a) of the Lanham Act. On April 23, 2012, this Court granted Plaintiff's request for a preliminary injunction against Zaffina and Corporation on Plaintiff's § 43(a) claim and enjoined them from using the marks at issue. On September 21, 2012, the Court struck Corporation's Answer pursuant to Fed. R. Civ. P. 12(f)(2) and the Clerk entered default against Corporation pursuant to Fed. R. Civ. Proc. 55(a).

Presently before the Court is Plaintiff's Motion for Partial Summary Judgment against Zaffina. For the following reasons, the Court **GRANTS** Plaintiff's Motion.

## II. FACTUAL BACKGROUND

Plaintiff is one of the oldest darts organizations in California and the United States. (Irete Decl. ¶ 2.) Plaintiff is a member in good standing with American Darts Organization, the governing body of organized darts in the United States, which considers Plaintiff to be its founding member. (*Id.* at ¶ 8.) Plaintiff's purpose is to promote competitive darts and to coordinate league play, both locally and at the national and international levels. (*Id.* at ¶ 3, Ex. A.) Plaintiff has longstanding relationships with pubs, restaurants, and social clubs throughout the region ("Host Pubs") that host league events and contribute sponsorship fees. (*Id.* at ¶ 11.)

Since its inception in the early 1960s, Plaintiff has used the name "Southern California Darts Association," the nickname "SoCal Darts," the acronym "SCDA," and a logo featuring a

dartboard with Southern California Darts Association around the perimeter in the promotion and advertising of its services (collectively, "Plaintiff's Marks" or "Marks"). (*Id.* at ¶ 9; Mot. Summ. J. App. A.) For a period of time in the 1960s and 1970s, several members of Plaintiff formed a corporation, "Southern California Darts Association, Inc.," which became inactive in 1977 ("Defunct Corporation"). (Irete Decl. ¶ 16.) The parties dispute whether this corporation was a separate entity from Plaintiff.

Zaffina is a former member of Plaintiff. (*Id.* at ¶ 17.) In July 2010, Zaffina became upset about Plaintiff's failure to include his middle initial in Plaintiff's weekly league scoring reports. Subsequently a dispute arose between Zafina and Plaintiff's board members, resulting in the discontinuation of Zaffina's membership with Plaintiff as of August 23, 2010. (*Id.* at ¶¶ 18-19.)

On January 3, 2011, Zaffina registered a corporation with the California Secretary of State under the name Southern California Darts Association, Inc. ("Corporation"), naming himself the President and CEO of the Corporation. Zaffina registered the domain name www.sourtherncaliforniadartsassociation.com and posted a website on that URL. After forming Corporation, Zaffina registered the fictitious business names "SCDA," "So Cal Darts Association," and "So Cal Darts." (Kawahito Decl. ¶ 2, Ex. A at ¶ 12.) Zaffina also created a logo just like Plaintiff's that features a dartboard with "Southern California Darts Association" around the perimeter. (*Id.* at ¶ 2, Ex. A at ¶ 40.) Zaffina admits he chose these marks, which are identical with Plaintiff's Marks, in order to trade on Plaintiff's goodwill and reputation. (*Id.* at ¶ 2, Ex. A at ¶ 10.)

On August 29, 2011, in a press release via e-mail, Zaffina provided notice of Corporation's legal status to approximately 300 individuals and business entities, including Plaintiff's members and some of the Host Pubs. (*Id.* at ¶¶21-22, Ex. P.) Zaffina claimed that Corporation had acquired exclusive rights to use the name, "Southern California Darts Association," and Plaintiff's other Marks, and threatened legal action against those that used Plaintiff's Marks without permission. (*Id.*) As a result of this and further communications, many Host Pubs have refused to allow Plaintiff league play in their establishments and stopped paying sponsorship fees. (*Id.* at ¶ 24.)

### III.   JUDICIAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine if there is sufficient evidence for a reasonable jury to find for the nonmoving party, and a fact is "material" when it may affect the outcome of the case under substantive law that provides the claim or defense. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

The moving party has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party is without the ultimate burden of persuasion at trial, it may either produce evidence negating an essential element of the opposing party's claim, or demonstrate that the nonmoving party does not have enough evidence to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party meets this initial requirement, the burden then shifts to the opposing party to go beyond the pleadings and set forth specific facts that establish a genuine issue of material fact remains for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

In granting summary judgment, a district court is not entitled to weigh the evidence and resolve disputed underlying factual issues. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). Rather, courts are required to view all inferences to be drawn from "the underlying facts … in the light most favorable to the party opposing the motion." *Id.* (quoting *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)).

## IV.     DISCUSSION

As a preliminary matter, the Court notes Zaffina failed to oppose Plaintiff's Motion. Under Local Rules 7-9 and 7-12, the Court may deem Zaffina's inaction as consent to the granting of Plaintiff's Motion. However the Court elects to decide the Motion on the merits.

To prevail on its Lanham Act claim against Zaffina, Plaintiff must establish that: (1) Zaffina is personally liable for his role in directing and authorizing Corporation's infringing activities and (2) Zaffina violated § 43(a) of the Lanham Act. The Court addresses each element below.

### A.     Personal Liability for the Infringing Acts

A corporate "officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985). Section 43(a) of the Lanham Act imposes liability on "*[a]ny person* who, on or in connection with any goods or services … uses in commerce any … name … which … is likely to cause confusion." 15 U.S.C. § 1125(a) (emphasis added). Thus, a corporate officer can be held personally liable under the Lanham Act when he is an actual participant in the trademark infringement. *See Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978).

The Court finds that Zaffina is personally liable because he personally directed and authorized Corporation's infringing activities. Plaintiff has presented evidence that Zaffina (1) is the sole officer and director of Corporation (Kawahito Decl. ¶ 3, Ex. B at No. 11.); (2) registered the infringing marks (*Id.* at ¶ 2, Ex. A at ¶ 12.); (3) registered the infringing domain name and drafted the contents of the website (*Id.* at ¶¶ 3-4, Ex. B, C.); (4) authorized the press releases wherein Corporation claimed exclusive rights to Plaintiff's Marks (*Id.* at ¶ 4, Ex. A, C.); and (5) directed business on behalf of Corporation (*Id.* at ¶3, Ex. B at No. 12.). Zaffina has presented no evidence controverting these facts. Therefore, the Court finds no triable issue of material fact as to Zaffina's personal liability for Corporation's infringement. *See Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823-24 (9th Cir. 1996) (finding that corporate officers who deliberately incorporated the trade name of a default environmental corporation to add to their credibility as environmentalist could be held personally liable under § 43(a)).

### B.     Violation of § 43(a) of the Lanham Act

To establish a violation of § 43(a) of the Lanham Act, Plaintiff must show that (1) it has a valid, protectable trademark, and (2) the alleged infringer's use of the mark is likely to cause confusion. *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). The Court finds that Plaintiff establishes both elements.

1. *Valid and Protectable Trademark*

There are three ways in which a plaintiff can establish that it has a valid, protectable trademark: "(1) it has a federally registered mark in goods or services; (2) its mark is descriptive but has acquired a secondary meaning in the market; or (3) it has a suggestive mark, which is inherently distinctive and protectable." *Id.* at 969-70.

Plaintiff does not have a federally registered trademark, and therefore is not entitled to the presumption of validity that registration confers. However, Plaintiff argues that Southern California Darts Association and its other Marks are valid and protectable trademarks, as they have developed a secondary meaning in the market. The Court agrees.

Whether a mark has acquired a secondary meaning "depends upon its use in relation to goods business[es] or service[s] to the point where the public identifies the name with a particular individual or entity." *N. Am. Aircoach Sys. v. N. Am. Aviation*, 231 F.2d 205, 210 (9th Cir. 1955). In the Ninth Circuit, "[p]roof of exact copying [by the defendant], without any opposing proof, can be sufficient to establish a secondary meaning." *Comm. for Idaho's High Desert, Inc.*, 92 F.3d at 823 (quoting *Transgo, Inc.*, 768 F.2d at 1016). Other factors that the Court may consider in determining whether a plaintiff's marks have acquired a secondary meaning are the degree and manner of advertising under the mark, the length and manner of use of the marks, and whether use of the marks has been exclusive. *Comm. for Idaho's High Desert, Inc.*, 92 F.3d at 822.

Zaffina does not dispute Plaintiff's priority of use of the Marks or the secondary meaning that the Marks have developed. Plaintiff has used the name Southern California Darts Association and its other Marks for nearly fifty years, during which Plaintiff has developed worldwide recognition as one of the oldest darts organizations in California and the United States (Irete Decl. ¶ 2; Peek Decl. ¶¶ 9-10, 12, Ex. B.). In fact, Zaffina admitted that he deliberately appropriated Plaintiff's Marks precisely because of their strong reputation in the darts community as being associated with Plaintiff. (Kawahito Decl. ¶ 2, Ex. A at ¶ 10.) ("Since early 2010, I[, Zaffina,] had planned to form a dart business …. It is not everyday that a business established approximately 50-years ago was [sic] available …. [W]hat smart business person would not acquire a Corporation under the name *The Coca Cola Company* if that company was so foolish as to let their legal status be suspended …?") This evidence of intentional copying, in conjunction with Plaintiff's acclaim in the darts community, is sufficient to establish a secondary meaning. *See Comm. for Idaho's High Desert, Inc.*, 92 F.3d at 921 (finding that the fact that the alleged infringers deliberately adopted and used the plaintiff's marks offered strong support for the existence of a secondary meaning).

Plaintiff's evidence has established that it has valid, protectable trademarks. Zaffina has offered no controverting evidence. Therefore, the Court finds no triable issue of material fact as to the Plaintiff's Marks constituting valid, protectable trademarks

2. *Likelihood of Confusion*

According to the Ninth Circuit, "[t]he core element of trademark infringement is the likelihood of confusion, *i.e.*, whether the similarity of the marks is likely to confuse customers about the source of the products." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992). To determine whether there is a likelihood of confusion, courts utilize the *Sleekcraft* factors: (1) the similarity of the marks; (2) the relatedness of services; (3) the similarity of marketing channels used; (4) the strength of the mark; (5) the defendant's intent in selecting the mark; (6) evidence of actual confusion; (7) the likelihood of expansion of the

product lines; and (8) the degree of care likely to be exercised by the purchaser. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 2003).

A showing of all the factors in Plaintiff's favor is not required. *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1391 (9th Cir. 1993). The factors are "best understood as simply providing helpful guideposts." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010). Thus, instead of mechanically determining the number of factors that weigh in favor of each party, the court must consider what the analysis of the factors, as a whole, reveals about the likelihood of consumer confusion. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002). Further, the Ninth Circuit has indicated that the first three factors are "the controlling troika in the *Sleekcraft* analysis." *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 119, 1205 (9th Cir. 2000). The Court will consider each *Sleekcraft* factor in turn, paying special attention to the first three factors.

### a. *Similarity of the Marks*

The Ninth Circuit has developed three axioms that apply to the similarity analysis: (1) marks should be considered in their entirety and as they appear in the marketplace; (2) similarity is best adjudged by appearance, sound, and meaning; and (3) similarities weigh more heavily than differences. *Entrepreneur Media, Inc.*, 279 F.3d at 1144. "[T]he greater the similarity between the two marks at issue, the greater the likelihood of confusion." *GoTo.com, Inc.*, 202 F.3d at 1206.

Since inception, Plaintiff has identified its organization using the following Marks: "Southern California Darts Association," "SCDA," "SoCal Darts," and a logo featuring a dart board with "Southern California Darts Association" around the perimeter (Irete Decl. ¶ 9.). Zaffina uses identical marks to identify Corporation, including the names "Southern California Darts Association, Inc.," the acronym "SCDA," the abbreviation "SoCal Darts," and a logo featuring a dartboard with "Southern California Darts Association" around the perimeter. (Kawahito Decl. ¶ 2, Ex. A at ¶ 11.) Considering the marks in their entirety, the Court finds that Zaffina's marks are identical in appearance, sound, and meaning to Plaintiff's Marks.

### b. *Relatedness of Services*

It is undisputed that the primary function of Plaintiff and Zaffina's Corporation is to organize, promote, and run competitive darts league play for members in Southern California. (Irete Decl. ¶ 3; Kawahito Decl. ¶ 3, Ex. B at No. 4, Ex. B) Therefore, the Court finds that the parties offer identical services.

### c. *Marketing Channels Used*

Plaintiff's evidence indicates that both Plaintiff and Zaffina use the Web as a substantial marketing and advertising channel. (Kawahito Decl. ¶ 4, Ex. C at No. 6.) Courts have consistently recognized this as a factor that exacerbates the likelihood of confusion. *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1057 (9th Cir. 1999). The Ninth Circuit has repeatedly stated "that the Web, as a marketing channel, is particularly susceptible to a likelihood of confusion since … it allows for competing marks to be encountered at the same time, on the same screen." *GoTo.com, Inc.*, 202 F.3d at 1207. In addition to the Web, the evidence shows that both Plaintiff and Zaffina use letters and verbal communications with the Host Pubs to promote their events. (Irete Dec. ¶¶ 21-23.) Therefore, the Court finds that the parties use identical marketing channels to advertise their services.

### d. *Strength of the Mark*

According to the evidence, Plaintiff is one of the oldest darts organizations in the United States and recognized in multiple types of media. (Irete Decl. ¶ 2; Peek Decl. ¶¶ 9-10, 12, Ex. B.) Therefore, Plaintiff's Marks are strong in the darts community. *See E. & J. Gallo Winery*, 967 F.2d at 1291 (holding that a winery's mark was strong due to the winery's long, continued use of the mark and the marks widespread, national public recognition in the wine product field).

### e. *Defendant's Intent in Selecting the Mark*

As discussed above, the evidence shows that Zaffina intentionally selected his marks to capitalize on Plaintiff's wide acclaim in the darts community. (Kawahito Decl. ¶ 2, Ex. A at ¶ 10.)

### f. *Evidence of Actual Confusion*

Plaintiff has introduced evidence that Ventura County Darts Association ("VCDA"), which regularly interacts with Southern California Darts Association to organize events, was confused as to whether Plaintiff or Zaffina controlled Southern Darts Association. As a result, VCDA contemplated suspending that relationship in order to avoid potential liability in associating with the wrong party. (Needham Decl. ¶¶ 6-8.) This evidence indicates that Zaffina's use of his marks has caused confusion in the darts community as to who is legally running Southern California Darts Association.

### g. *Other Factors*

The Court finds that the last two factors—likelihood of expansion into other product lines and degree of care likely to be exercised by purchasers—are not informative to the analysis in the current matter. First, Plaintiff and Zaffina compete solely in the provision of darts league play. Second, the degree of care likely to be exercised purchasers is minimal because the decision to join a darts league does not involve a high level of sophistication, as membership fees and alternative options for competitive darts league play in southern California are limited. Therefore, the Court declines to evaluate these two factors.

After weighing the *Sleekcraft* factors as a whole, the Court finds that Plaintiff has introduced sufficient evidence that establishes a high likelihood of confusion. Zaffina has not offered any evidence to the contrary. Therefore, the Court finds no triable issue. Plaintiff has shown that Zaffina violated § 43(a) of the Lanham Act and is personally liable.

## V. **CONCLUSION**

In light of the foregoing, the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment against Zaffina.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer

_____